REGINALD W. HUTTON ET AL. *v.* SAFE DEPOSIT AND TRUST COMPANY ET AL.

*Construction of Will—Purpose of Equality—Effect of Codicil —Sale of Property Devised—Substituted Gift — Legacy Payable in Future—Present Value.*

Testatrix' scheme of equality, as between her two daughters and one son, otherwise apparent from the will, was not overthrown by the fact that the will stated that she had previously given to the daughters her jewelry, laces, and wearing apparel, and also all the furniture contained in one of her residences, and that she had given to the son other furniture, which was of less value than that given the daughters.          p. 551

A codicil which stated that testatrix, "having sold" part of a residence property given the son by her will, gave him a sum of money, with a power of control thereover approximately similar to that given him by her over the residence prop-

erty, *held* to give him the money, not as an independent legacy, but in lieu of the part of the property sold, so that the money was to be treated as a part of the residence property for the purpose of computing the owelty which was, by the terms of the will, to be charged against the son in order to equalize gifts of residence properties as between the son and the daughters.                    pp. 549-555

The intent of a testator is the law of wills, unless in conflict with some settled rule of law or of property.          p. 554

A will and its codicil are to be construed together.     p. 554

A pecuniary legacy, payable at a definite stated time in the future, does not bear interest until such time.          p. 555

Where testatrix gave a residence property to her son, with a direction that his interest in the residue of her estate should be charged with an owelty equal to the difference between the value of that property and one-third the combined values of that and another residence property, such values to be determined by appraisement after her death, and by a codicil, in lieu of a part of the residence property given the son, and since sold, she gave him $100,000 payable some years in the future, the appraised value of this legacy, for the purpose of fixing the owelty, was such sum as, invested at six per cent compound interest, would produce $100,000 when it became payable.
pp. 555, 556

*Decided April 15th, 1926.*

Appeal from the Circuit Court of Baltimore City (Solter, J.).

Bill by the Safe Deposit and Trust Company of Baltimore and others, executors under the last will of Celeste M. W. Hutton, deceased, against Reginald W. Hutton, Celeste Marguerite Hutton and others for a construction of said will. From the decree rendered, said named defendants appeal. Reversed in part and affirmed in part.

The cause was argued before Bond, C. J., Pattison, Adkins, Offutt, Digges, Parke, and Walsh, JJ.

*Alexander Armstrong* and *Arthur W. Machen, Jr.*, with whom were *John Henry Lewin* and *Armstrong, Machen & Allen* on the brief, for the appellants.

*Frank Gosnell* and *Wm. L. Marbury, Jr.*, with whom were *Marbury, Gosnell & Williams* on the brief, for the appellees.

DIGGES, J., delivered the opinion of the Court.

This case brings before this Court for review a decree of the Circuit Court of Baltimore City construing the will and codicil of Celeste M. W. Hutton. The will was executed on the 21st day of June, 1919, and the codicil thereto on the 17th day of November, 1922. The testatrix was possessed of a large estate, consisting of realty and personalty, and had at the time of the execution of the will and at the time of her death three children, a son, Reginald W. Hutton, and two daughters, Elsie C. Hutton and Lucette M. Prichard. At the time of the execution of the will and at her death the testatrix owned a parcel of real estate situated on Fremont and Hollins Streets in Baltimore City, known as "Alexandroffsky," and also a tract or parcel of real estate located in Baltimore City, formerly Baltimore County, known as "Crimea," and another small portion of land described in the will as a lot of ground on Franklin Turnpike Road, with improvements thereon formerly occupied as a toll-gate house. By items four and five of the will she devised as follows:

"Item IV. I give and devise to my daughters, Elsie C. Hutton and Lucette M. Prichard, for and during the full term of their natural lives, each an undivided one-half equal part of, in and to all my lands and estate situate in the City of Baltimore, State of Maryland, fronting on Baltimore Street, Fremont Street and Hollins Street, and known as 'Alexandroffsky' (also known as No. 838 Hollins Street), together with all the buildings and improvements upon said property, with full power to my said two daughters or such of them as may survive me, with the written consent

of the Safe Deposit and Trust Company of Baltimore, a corporation, to sell the whole or any part or parts thereof, and by good and sufficient deed or deeds convey the same to the purchaser or purchasers thereof without any obligation upon the part of the purchaser or purchasers to see to the application of the purchase money; the proceeds of said sale or sales to be received by my trustee hereinafter named and held by said trustee upon the same trusts and for the same persons and purposes and subject to the same rights and powers of my said daughters respectively in and over the same, principal and income, as are hereinafter mentioned and declared respecting my daughters' shares respectively of the rest and residue of my estate.

"With further power to each of my said two daughters to devise and dispose of by last will and testament, duly executed according to the laws of the State of Maryland, each an undivided one-half part of so much or such part of my property known as 'Alexandroffsky' as may not have been sold and conveyed as hereinbefore authorized.

"Should, at the death of the last survivor of my said two daughters, the whole or any part of 'Alexandroffsky' remain unsold and conveyed by virtue of the power hereinbefore given or remain undisposed of by their respective last wills and testaments as hereinbefore authorized, then I authorize and direct that Safe Deposit and Trust Company of Baltimore, a corporation, sell at public or private sale the whole or such part of my said property known as 'Alexandroffsky' as may not have been sold and conveyed by my daughters or such of them as may survive me, as above authorized or disposed of by their respective last wills and testaments as hereinbefore authorized and by good and sufficient deed or deeds to convey the same to the purchaser or purchasers thereof without any obligation upon the part of the purchaser or purchasers to see to the application of the purchase money, and to pay over the proceeds of such sale or sales to the then living descendants of such of my said two daughters who may not have disposed of, as above authorized,

their respective interests in said property, *per stirpes* and not *per capita*.

"I have made no disposition herein of the household and kitchen furniture and other contents of every description of what kind soever of the buildings at 'Alexandroffsky,' and the tools and implements there located and being, as prior to the execution hereof I gave the same to my said two daughters, to whom I also gave prior to the execution hereof all my jewelry, laces and personal adornments.

"Item V.  I give and devise to my son, Reginald W. Hutton, my lands in Baltimore County, State of Maryland, known as 'Crimea' bounded in part by the Windsor Mill Road, the Franklin Turnpike Road and the Frederick Road, now Edmondson Avenue, together with the buildings and improvements thereon for and during the full term of his natural life, with full power to my said son any time during his life, with the written consent of the Safe Deposit and Trust Company of Baltimore, a corporation, to sell the whole or any part or parts thereof, and by good and sufficient deed or deeds to convey the same to the purchaser or purchasers thereof, without any obligation upon the part of the purchaser or purchasers to see to the application of the purchase money, my said son to retain the proceeds of said sale or sales, provided he shall then have reached the age of thirty-five years, otherwise the proceeds of said sale or sales are to be retained by my trustee hereinafter named and held by said trustee upon the same trusts and for the same persons and purposes and subject to the same rights and powers of my said son in and over the same, principal and income, as are mentioned and declared respecting my son's share of the rest and residue of my estate.

"And from and after the death of my said son I give and devise the above mentioned lands known as 'Crimea' or such part thereof as may not have been sold and conveyed by my said son during his lifetime, as hereinbefore authorized, to such persons or objects as my said son shall limit and appoint by his last will and testament executed according to the laws of Mary-

land, after he attains the age of thirty years, full power and authority being hereby given to him to make and execute such last will and testament; and in case my said son does not exercise such power of appointment or in so far as his said will shall fail to operate upon said lands, then I give and devise the same to the child, children and descendants of my said son living at the time of his death *per stirpes* and not *per capita;* and should my said son die without descendants surviving him and without having exercised such power of appointment or in so far as his will may fail to operate thereon, then I give and devise the same to his sisters and the children of a deceased sister then living *per stirpes* and not *per capita.*

"I have made no disposition herein of the household and kitchen furniture and other contents of every description of what kind soever of the buildings at 'Crimea,' or the live stock, cattle and farming implements there located and being, as prior to the execution hereof I gave the same to my said son.

"I give and devise to my said son absolutely my lot of ground on the Franklin Turnpike Road and the improvements thereon formerly occupied as a tollgate house."

By item seven the testatrix created a trust of the residue of her estate, with the following provisions:

"Item VII. I give, devise and bequeath all the rest and residue of my property and estate, real, personal and mixed, and wheresoever situate, including herein my cash, stocks, bonds and other securities and choses in action, hereinafter sometimes designated as 'the trust estate' to the Safe Deposit and Trust Company of Baltimore, a corporation duly incorporated under the laws of the State of Maryland, hereinafter called 'my trustee.' In trust and special confidence, nevertheless, and to, for and upon the following uses, trusts and purposes, that is to say:

"To collect the rents, issues, income and profits issuing or arising therefrom, or from any investments or

reinvestments thereof, and after paying thereout taxes and all other expenses upon and incident thereto, and the cost and expenses attending the administration of said trust estate, including commissions to my trustee as compensation for its services in the premises, at the rate of five per cent (5%) upon the receipt of income and revenue, to pay the remaining or net income and revenue derived from the said trust estate, as follows: One-third thereof to my daughter, Elsie C. Hutton, for and during the full term of her natural life, free from the debts and control of any husband she may have; one-third thereof to my daughter, Lucette M. Prichard, for and during the full term of her natural life, free from the debts and control of any husband she may have; and the remaining one-third thereof to my son, Reginald W. Hutton, until the termination of the trusts hereinafter created and declared respecting my son's share of the corpus.

"And upon the death of each of my said daughters, I will and direct said trustee to distribute one-third of the corpus or principal of said trust estate (in this clause and for this purpose designated as a daughter's share) as follows: upon the death of each of my daughters who may die leaving a child or children or descendant of a deceased child surviving her, distribution is to be made of a daughter's share, free, clear and discharged of all trusts created by my will, to such persons or objects as she may limit and appoint by last will and testament duly executed according to the laws of the State of Maryland, full power and authority being hereby given to her to make and execute such last will and testament, and so much or such part of said daughter's share as may not be affected by her last will and testament so authorized, shall be distributed by said trustee to her surviving descendants *per stirpes* and not *per capita;* upon the death of each of my daughters who may die without leaving a child or children or descendants of a deceased child surviving her, distribution is to be made of a daughter's share to my other daughter then living and my son Reginald

W. Hutton, if then living, and to the descendants then living of such of them as may be deceased, *per stirpes* and not *per capita.*

"And I further will and direct that should my said son attain the age of thirty-five years, my said trustee may from time to time, after my said son reaches said age, pay over and deliver to him the remaining one-third of the corpus or principal of the trust estate as may then be in possession of my said trustee, or such part or parts thereof as my said son may from time to time, after he reaches said age of thirty-five years, in writing designate, and in further trust to pay over and deliver so much and such part of the said one-third of the corpus or principal of the trust estate as may not have been paid over to my said son after he arrives at the age of thirty-five years, as hereinbefore authorized, to and for the use of such person or persons and such purposes as he, my said son, may limit and appoint by his last will and testament, duly made and executed according to the laws of the State of Maryland, after he attains the age of thirty years, full power and authority being hereby given my said son to make and execute such last will and testament, should, however, my said son depart this life leaving a child or children or descendants of a deceased child or children surviving him, then I will and direct that the whole or such part of said one-third of the corpus or principal of the trust estate, and in the hands or possession of my trustee at the death of my said son, and which may not be affected by his last will and testament executed as aforesaid, shall, upon the death of my said son, be paid over and delivered by my trustee free, clear and discharged of any and all trusts created by my will to the child or children and the descendants of a deceased child or children of my said son, who may survive him, *per stirpes* and not *per capita,* but should my said son depart this life without leaving a child or children or descendant of a deceased child or children surviving him, then I will and direct that the whole or such part of said one-third of the corpus or principal of the trust estate then remaining in

the hands or possession of my trustee and which may
not be affected by his last will and testament executed
as aforesaid, shall, upon the death of my said son be
paid over by my trustee, free, clear and discharged of
any and all trusts created by my will, to his surviving
sister and the descendants of a deceased sister *per
stirpes* and not *per capita.*

"And I do hereby will and direct that my trustee
shall as soon as may be convenient after my death
appraise and value my estate known as 'Crimea' to-
gether with the said lot on the Franklin Turnpike
Road and improvements formerly occupied as a toll-
gate house and my estate known as 'Alexandroffsky';
whereupon my said trustee is hereby authorized, em-
powered and directed to deduct from and retain out
of the share of my estate held in trust for my said
son such sum as may be the difference between one-
third of the combined value so ascertained of 'Crimea'
and said toll-gate house property and 'Alexandroffsky,'
and the value so ascertained of 'Crimea' and said toll-
gate house property, and to that extent reduce the
share of my residuary estate held in trust for my son
as above set forth. The amount so deducted from my
son's share of my residuary estate is to be retained by
my trustee and held upon the same trusts and for the
same persons and purposes and subject to the same
rights and powers of my said daughters respectively
in and over the same, principal and income, as are
hereinbefore mentioned and declared respecting my
daughters' shares respectively of the rest and residue
of my estate."

It will be seen by the fifth paragraph of item seven that
the testatrix directed the trustee named in the will, as soon
as convenient after her death, to appraise and value her
estate known as "Crimea," including the lot with improve-
ments formerly occupied as a toll-gate house, and also ap-
praise her estate known as "Alexandroffsky." She then au-
thorized and directed the trustee to deduct from and retain,
out of the share of her estate held in trust for her son, such

a sum as is the difference between one-third of the combined appraised values of "Crimea" and the toll-gate house property and "Alexandroffsky," and the value of "Crimea" and the toll-gate house property so ascertained, and to that extent reduce the share of her residuary estate held in trust for her son. Or in other words, by this paragraph the testatrix directed that the trustee, as soon as convenient after her death, appraise "Alexandroffsky," "Crimea" and the toll-gate property; add together these appraisements and divide this sum by three; then take the sum shown as the result of this division and subtract it from the appraised value of "Crimea" and the toll-gate property, thus fixing the amount of owelty, and being the sum which was to be deducted from the son's portion of the residuary estate held by the trustee. The codicil to the will is as follows:

"I, Celeste M. W. Hutton, widow, of the City of Baltimore, in the State of Maryland, do make, publish and declare this as and for a Codicil to my last Will and Testament heretofore executed by me on the 21st day of June, 1919.

"Having recently sold to The Northwest Real Estate Company, a Maryland corporation, for the sum of one hundred and eight thousand seven hundred and fifty dollars ($108,750) about eighty (80) acres of my lands in Baltimore City (formerly Baltimore County), State of Maryland, known as 'Crimea,' I hereby give and bequeath the sum of one hundred thousand dollars ($100,000) to my son Reginald W. Hutton absolutely upon his arrival at the age of thirty-five years, and should my son die before he reaches the age of thirty-five years, then said sum of one hundred thousand dollars ($100,000) is to be retained by my trustee named in my said will and held by said trustee upon the same trusts and for the same persons and purposes and subject to the same rights and powers of my said son in and over the same, principal and income, as are mentioned and declared respecting my son's share of the rest and residue of my estate.

"In all other respects I do hereby ratify, republish and reaffirm my aforesaid last will and testament.

> "In witness whereof I hereunto subscribe my name and affix my seal this 17th day of November, in the year 1922.
>
> "Celeste M. W. Hutton.
>
> "(Seal)
>
> "Signed, sealed, published and declared by Celeste M. W. Hutton, the above named testatrix, as and for a codicil to her last will and testament, in the presence of us, who, at her request, in her presence, and in the presence of each other, have hereunto subscribed our names as witnesses this      day of November, 1922.
>
> "Adeline Gracie,
>
> "Geo. Worthington."

Between the execution of the will and the making of the codicil the testatrix sold eighty acres of the tract known as "Crimea" for the sum of $108,750. The appellees contend that the legacy of $100,000 bequeathed to the son by the codicil is in lieu of the eighty acres of land sold from "Crimea," and therefore the sum of $100,000 should be added to the appraised value of "Crimea" in order to arrive at the proper owelty; while the appellants contend that the $100,000 legacy left to the son in the codicil is an independent specific bequest, and should not be considered as a part of "Crimea" or taken into account in determining the owelty. The trustee, shortly after the death of the testatrix, appraised "Alexandroffsky" at $163,000, and what was then remaining of "Crimea"—that is to say, without taking into account the eighty acres theretofore sold by the testatrix—together with the toll-gate property, at $145,000. Reducing the contentions of the respective parties to figures, as to what should be the owelty, we find that the appellant contends that the owelty should be arrived at by adding $145,000, the value of "Crimea" and the toll-gate lot, and $163,000, the value of "Alexandroffsky," making a total of $308,000; that this sum of $308,000 should be divided by three, the result being $102,667, and this being subtracted from $145,000, the appraised value of "Crimea," would leave $42,333 as the

owelty; the appellees contending, and the lower court so deciding, that to the $308,000, the appraised value of "Alexandroffsky" and "Crimea," should be added the sum of $100,-000, the amount of the legacy left to the son in the codicil, and representing, as they claim, the eighty acres of "Crimea" theretofore sold by the testatrix, thus making the sum of $408,000 to be divided by three, and showing, after such division, $136,000, which should be taken from the appraised value of "Crimea," $145,000, plus the $100,000 legacy, and leaving as a remainder $109,000 as the proper owelty.

A careful scrutiny of the entire will in this case convinces us that the general scheme of the testatrix was equality among her three children with respect to the property devised or bequeathed by the will and codicil. There is some testimony contained in the record, offered by the appellant, to show that the testatrix, prior to the making of the will, had, by a deed of trust of some $300,000, made a larger provision for the daughters than for the son. This deed of trust, which was executed more than two and a half years before the will, gave each of the daughters (there being then three) two-sevenths of the trust fund created by that instrument, while the son received one-seventh. It does not appear from the record whether or not the son, prior to the execution of the will, had gotten any other advancement from his mother, but it is certain that the inequality, produced by the execution of the deed of trust referred to, existed at the time of the execution of the will, and the testatrix at the time of making the will was fully cognizant of this inequality. It is also contended that in the will itself inequality is shown by the bequest to the two daughters of the testatrix' jewelry, laces and wearing apparel, and that the bequest to the daughters of the furniture within the mansion house on "Alexandroffsky" was of much greater value that the furniture in the mansion house on "Crimea" which was bequeathed to the son, and that by reason of these alleged inequalities the testatrix, by the codicil in which she bequeathed to the son the sum of $100,000, had in mind and it was her purpose

to correct such inequality by said legacy of $100,000 to the son. We are of the opinion that the bequest of jewelry, laces and wearing apparel to the daughters does not destroy the scheme of equality as evidenced by the whole will. Female wearing apparel, laces and jewelry, belonging to the testatrix and used for her personal adornment, naturally would be given to the daughters, and the fact that the household furnitures at "Alexandroffsky" and "Crimea" were not of equal value is not sufficient to overthrow the very apparent scheme of the whole will of equality. At the time of the execution of the will, "Crimea," which was devised to the son, contained eighty acres more land than at the time of the execution of the codicil. The testatrix, some time shortly before the execution of the codicil, or at least between the time of the making of the will and the making of the codicil, sold and conveyed eighty acres of "Crimea." It is perfectly apparent from a reading of the codicil that this sale of eighty acres of "Crimea" was the fact which induced the testatrix to make the codicil. The preamble to the codicil is as follows: "Having recently sold for the sum of $108,750 about eighty acres of my lands known as 'Crimea.'" Then follows the bequest of $100,000 to her son upon his reaching the age of thirty-five years. This language is equivalent to the testatrix saying: "Having sold eighty acres of 'Crimea,' heretofore devised to my son, for that reason I hereby bequeath to my said son the sum of $100,000." The contention of the appellants that the bequest of $100,000 to the son is an independent legacy and is not a substitution or in lieu of the eighty acres of "Crimea" theretofore sold by the testatrix, cannot be sustained unless we disregard entirely the preamble to the codicil. The general rule of construction requires us to give a meaning and purpose to every part of the will and codicil. The language of the preamble to the codicil is entirely meaningless and would have to be rejected as surplusage unless it is held to mean that the testatrix, having sold a part of "Crimea," which by the will was devised to her son, intended by the codicil to substitute, in place of the

eighty acres so sold for something over $100,000, the legacy
of $100,000. This, we think, was the intent of the testatrix,
as gathered from a construction of the whole codicil; and
this is in accord with the general scheme of equality ex-
pressed in and gathered from the entire will. It is also to be
observed that in the codicil the testatrix in all other respects
ratifies, republishes and reaffirms the will. This language
indicates that at the time of the making of the codicil the
testatrix did not desire to change or interfere with the gen-
eral plan and scheme of the will, except in so far as the
codicil was inconsistent therewith. It will also be noted
that by the provisions of item five of the will the son is
given full power at any time during his life, with the written
consent of the trustee, to sell the whole or any part of
"Crimea" and retain the proceeds of said sale or sales, pro-
vided he shall then have reached the age of thirty-five years;
otherwise the proceeds of said sale or sales are to be re-
tained by the trustee and held upon the same trusts and
for the same persons and purposes and subject to the same
rights and powers of the son in and over the same, both
principal and income, as are mentioned and declared re-
specting the son's share of the rest and residue of the estate.
The direction as to the son's share of the residue of the estate
is to the effect that: "Should my said son attain the age of
thirty-five years, my said trustee may from time to time, after
my said son reaches said age, pay over and deliver to him the
remaining one-third of the corpus or principal of the trust
estate as may then be in possession of my said trustee, or such
part or parts thereof as my said son may from time to time,
after he reaches said age of thirty-five years, in writing
designate." The will then makes provision for the disposi-
tion of any part of the residuary estate belonging to the
son in case he should die before he reaches the age of thirty-
five, as also any portion of said residuum remaining in the
hands of the trustee and not paid over to the son during
his lifetime. The codicil gives the $100,000 legacy to the
son absolutely upon his arrival at the age of thirty-five years,

and then provides that if the son dies before he reaches the
age of thirty-five the $100,000 should be held by the trustee
in the same manner as the son's share of the rest and residue
of the estate.   It will thus be seen that the directions con-
tained in the codicil in respect to the $100,000 legacy are
identical with the provisions contained in the will in respect
to "Crimea," with the single exception that the son receives
the $100,000 when he reaches thirty-five years of age with-
out having to obtain the consent of the trustee.   In other
words, if the testatrix had not sold any part of "Crimea"
after making the will, and the eighty acres had been sold
by the son after her death, it would have been necessary
for him to get the consent of the trustee to make the sale,
and the proceeds would have been held by the trustee until
he became thirty-five years of age, at which time, upon appli-
cation by him in writing to the trustee, it would have been
turned over to him; while under the provisions of the cod-
icil, the mother having made the sale during her lifetime,
the approximate proceeds of said sale are placed in the
hands of the trustee to be paid to the son upon his arrival
at thirty-five years of age, without making it necessary for
the son to apply in writing for the consent of the trustee;
the testatrix, by the codicil, in effect, substituting her con-
sent that it be paid over at the son's arrival at the age of
thirty-five, in the place of the trustee's consent.   If no sale
of any part of "Crimea" had been made by the testatrix, it
would have been the duty of the trustee, at her death, to
appraise "Crimea" as it then stood, for the purpose of ascer-
taining the amount of the owelty; and as the testatrix, in
effect, by her codicil said that because she had sold a part of
"Crimea" during her lifetime, she was therefore bequeath-
ing her son a legacy of $100,000 payable when he arrived
at the age of thirty-five, to take the place of that portion
of "Crimea" so sold, we think that it was the manifest inten-
tion of the testatrix that this legacy should be charged to
the son as if it were a part of the appraised value of
"Crimea," in determining the owelty.   It is objected by the

appellant that this construction renders the codicil meaningless; or in other words, that the amount received by the son from his mother's estate without any codicil would be the same as he would now receive under the above construction. Even if this were true, to give it any other construction would be to disregard the intent of the testatrix as expressed by the language of the preamble to the codicil, and destroy the manifest purpose of equality among her children in the distribution of the property disposed of by the will; and this we are unwilling to do. The intent of a testator is the law of wills, unless it conflicts with some settled rule of law or of property. This principle, in varying language, has been expressed in almost every case coming before this court wherein wills were to be construed. In *Chew v. Chew,* 1 Md. 163, it is said: "The rule of construction in all testamentary instruments is that the intention of the testator, as expressed by the language of the will, shall prevail if consistent with the settled rules of law, and the most liberal and enlarged interpretation will be given to all such instruments in order to effectuate the manifest design of the testator." In *Woman's Foreign Missionary Society v. Mitchell,* 93 Md. 199, the principle is thus expressed: "The cardinal canon around which all others center is this, that the intention of the testator when ascertained from the whole instrument, or from the instrument as read in the light of surrounding circumstances existing at the date of its execution, must be given effect if that intention does not antagonize or conflict with some rule of law or of property."

An equally well settled rule of construction is to the effect that a will and its codicil shall be construed together. In *Loyola College v. Dugan,* 137 Md. 552, it was said: "It is a settled rule of construction that a will and its codicils must be interpreted as one instrument, and the provisions of the will are to be given effect except to the extent only to which they are revoked by the codicils, whether in terms or by a clear inconsistency between the earlier and later expressions of the testator's intention." To the same effect are *Lewis v.*

*Payne,* 113 Md. 127; *Buchanan v. Lloyd,* 88 Md. 642; *Hutchins v. Pearce,* 80 Md. 434; *Halsey v. Convention,* 75 Md. 275; *Thomas v. Levering,* 73 Md. 451; *Johns Hopkins Hospital v. Pinckney,* 55 Md. 365.

In our opinion the testatrix by her codicil substituted the legacy of $100,000, payable when Reginald W. Hutton reaches thirty-five years of age, for the eighty acres of "Crimea" sold by her during her lifetime; but this does not mean that for the purpose of determining the owelty the sum of $100,000, the amount of the legacy, should be used, for the reason that what the testatrix substituted for the land sold by her, for the purpose of owelty, was the value of the legacy at the time of the appraisement by the trustee of "Alexandroffsky" and "Crimea." This legacy of $100,-000 is payable when Reginald W. Hutton reaches the age of thirty-five years, and means that at that time he shall receive $100,000, no more and no less. It is a legacy of $100,000 payable at a definite stated time, and, under the authority of this Court, does not bear interest until after the date specified for its payment. *Budd v. Garrison,* 45 Md. 418; *Von der Horst v. Von der Horst,* 88 Md. 127; *Webb v. Webb,* 92 Md. 101. It will therefore be seen that the payment of interest to Reginald W. Hutton, as provided by the decree of the lower court, is erroneous, as being in conflict with the decided law of this state. Neither can there be found any such intention on the part of the testatrix, either from the will or codicil. We are therefore of the opinion that, for the purpose of determining the amount of owelty, the trustee should add together the appraised value of "Alexandroffsky," $163,000, the appraised value of the remaining part of "Crimea" and the toll-gate property, $145,000, and such a sum as invested at six per cent. compound interest, on the date of the appraisement heretofore made, will produce $100,-000 when Reginald W. Hutton reaches the age of thirty-five, which sum we will designate as "$x$"; divide the sum thus obtained by three; then subtract the result of this division from the appraised value of "Crimea," $145,000, plus the

sum "*x*," which will give the correct owelty; the owelty thus arrived at to be deducted by the trustee from the share of Reginald W. Hutton of the residuary estate of the testatrix, and retained by the trustee and held upon the same trusts and for the same persons and purposes and subject to the same rights and powers of the two daughters of the testatrix respectively in and over the same, principal and income, as are mentioned and declared in item seven of the testatrix' will respecting the shares of her two daughters respectively of the rest and residue of the estate of the testatrix; and that no interest should be allowed Reginald W. Hutton on the legacy of $100,000 provided for by the codicil, but that the exact sum of $100,000 should be promptly paid him upon his arrival at the age of thirty-five. From the views herein expressed it will be seen that the chancellor erred in the first, second and third paragraphs of the decree appealed from. We find no error in the fourth paragraph of said decree, and the same will be affirmed.

> *Decree affirmed in part and reversed in part, and case remanded, that a decree may be passed in accordance with the views expressed in this opinion; the costs in this court to be paid by the executors out of the residuary personal estate of the testatrix.*