CHISM, EXECUTRIX *v.* REESE ET AL.

[No. 113, October Term, 1947.]

312

314

*Decided April 21, 1948.*

*Rehearing denied May 21, 1948.*

The cause was argued before MARBURY, C. J., DELA-PLAINE, COLLINS, GRASON, HENDERSON, and MARKELL, JJ.

*Edgar Allen Poe* and *J. Kemp Bartlett, Jr.,* with whom was *Richard W. Kiefer* on the brief, for the appellant.

*Edward H. Burke,* with whom were *Bowie, Burke & Leonard* on the brief, for the appellees.

DELAPLAINE, J., delivered the opinion of the Court.

This appeal is from a decree of the Circuit Court for Baltimore County construing the will of John R. Reese, owner of a farm at Owings Mills, who died May 28, 1899. His wife died in 1893.

The will, executed October 19, 1898, devises to the testator's unmarried son, John B. Reese, a life estate in his farm on condition that he will support an unmarried daughter, Mary L. Reese, or provide for her in an institution during her lifetime. If he is unwilling or unable to provide for himself and his sister from the farm, the testator's married sons, Charles A. and Francis D. Reese, who are named as executors, are authorized to farm or rent the farm, or sell all or such portion of the land as shall be necessary for their support.

The will also provides (1) that in case of Mary's death prior to the death of John, the entire income from the land shall be for the support or use of John during his lifetime; but (2) in case of John's death without heirs before the death of Mary, then whatever amount of the income from the land, or trust from sale of the land, shall not be necessary for the support of Mary shall "revert" to Charles A. and Francis D. Reese, to be di-

vided equally between them, or equally between their heirs, if they should not be living, *per capita*.

The will further provides (3) that in case John should leave heirs or a widow, they shall receive the income from the land during the lifetime of Mary; but (4) if there should be no children of John, and John should die leaving a widow, then the widow shall have what remains from the income after sufficient is taken out for the support of Mary; and (5) if John's widow outlives Mary, then the widow shall have one-half of the income during her unmarried life.

The will then contains the following provision, which is now in controversy: (6) "In case of the death of Mary L. Reese, John B. Reese and the wife of John B. Reese, then the whole of said property to go to the children of John B. Reese and wife, if any, and (7) if no children, then the said property to revert to my grandchildren, the issue of both of my sons, Charles A. Reese and Francis D. Reese, as tenants in common, the issue of said sons to take same *per capita*."

The cardinal rule for testamentary construction is that the intention of the testator must be gathered from the language of the entire will, particularly from the clause in dispute, read in the light of the surrounding circumstances at the time the will was made. The intention of the testator will be carried out whenever it can be done without violence to the language employed, unless it conflicts with some established rule of law. *West v. Sellmayer*, 150 Md. 478, 133 A. 333; *Hutton v. Safe Deposit & Trust Co.*, 150 Md. 539, 554, 133 A. 308; *Gent v. Kelbaugh*, 179 Md. 343, 18 A. 2d 595; *Robinson v. Mercantile Trust Co.*, 180 Md. 336, 24 A. 2d 299, 138 A. L. R. 1427; *Jones v. Holloway*, 183 Md. 40, 36 A. 2d 551, 152 A. L. R. 933. In this case only the quoted provision is directly in controversy. But from the will as a whole there arise at least five queries which show its obscurity. First: Do not the words "without heirs" in the provision marked (2) mean "without heirs or a widow"? Otherwise, (2) and (4) would appear to be contradictory. Second:

Where does the other one-half of the income go under (5)? Does it go to Charles and Francis by implication under (2), or to their issue by implication under (7), or is there a partial intestacy? Third: Do not the words "heirs or a widow" in (3) mean "heirs or both heirs and a widow"? Otherwise, (3) and (4) would appear contradictory. Fourth: Does not the word "income" in (3) mean what remains after the support of Mary? Otherwise, Mary would be left without support. Fifth: Would equal division under (2) between Charles or Francis and the heirs of the one deceased be entirely *per capita* or one-half to the living son? These queries show that, in seeking the testator's intention from the terms of the will, very little help can be gotten from other cases where more carefully worded alternative contingent remainders have slight resemblance, if any, to the will now before us.

Acting under a decree of the Court below, the executors sold a portion of the farm and invested proceeds of sale in securities. Francis D. Reese, one of the executors, died in 1934, and was survived by seven children: F. Sydney Reese, Elizabeth Reese Wilkens, Lewis R. P. Reese, John C. Reese, Dorothy Reese Ebaugh, Clement M. Reese and Donald Reese. All of them except Donald were born during the lifetime of the testator. Charles A. Reese, the other executor, died in 1939, and was survived by one child, Rev. Clarence Herbert Reese.

Mary L. Reese, life tenant, who never married, died in 1919. John B. Reese, the other life tenant, married after his father's death, but his wife died in 1904, and he died March 8, 1946, without children. After the death of the trustees, the Court appointed F. Sidney Reese and Rev. Clarence Herbert Reese as substituted trustees. Rev. Mr. Reese, who became a chaplain in the United States Army, died in Nevada August 20, 1945. F. Sydney Reese, surviving trustee, reported March 26, 1947, that he held approximately $11,000 in cash and securities realized from the sale of a portion of the farm, and that the remaining portion, containing 196.6 acres, was under

318

contract of sale for $45,000. He also reported that Clement M. Reese died in 1931, but the other six children of Francis D. Reese voluntarily agreed that after the distribution of the estate one-seventh of the amount distributed would be paid to Patricia Reese, only child of Clement M. Reese. Acting on that petition the Court passed an order March 26, 1947, declaring (1) that the trust created by the will of John R. Reese terminated upon the death of John B. Reese March 8, 1946; (2) that the title to the farm vested in six equal shares in F. Sydney Reese, Elizabeth Reese Wilkens, Lewis R. P. Reese, John C. Reese, Dorothy Reese Ebaugh and Donald Reese, surviving children of Francis D. Reese, they being all of the testator's grandchildren living March 8, 1946; and (3) that the six grandchildren are also entitled to the personal estate held by the trustee.

Ellen Louisa Reese, appellant, widow of Rev. Clarence Herbert Reese, filed a petition May 8, 1947, after the Court had given her leave to intervene, alleging that her husband was a grandson of the testator and was born prior to his death; that he had a vested interest in the trust estate; that he left a will giving her all of his estate; and hence she was entitled to a share in the trust estate. She also claimed that her husband at the time of his death was entitled to trustee's commissions. On July 14, 1947, the Court confirmed the order of March 26, and dismissed her petition without prejudice to her claim to trustee's commissions. From that decree she appealed to this Court.

Appellant makes the following alternative contentions: (1) that the ultimate interests of either the children of John or the children of Charles and Francis might not have vested until the death of John's widow, who might have been born after the testator's death, and therefore the ultimate dispositions violated the rule against perpetuities and were void; and that a partial intestacy resulted, (*Perkins v. Iglehart*, 183 Md. 520, 39 A. 2d 672) with the result that one-half of the reversion descended to Charles, and from him to his son, and passed under

the son's will to appellant; and (2) that, if the first contention should be held unsound for the reason that the ultimate limitations vested in interest at John's death in any event, then the limitation "to my grandchildren, the issue of both of my sons, Charles A. and Francis D. Reese," although contingent as to the event, was not contingent as to the persons, but on the contrary embraced the grandchildren living at the time of the testator's death, and therefore a share passed to appellant under her husband's will. *Hammond v. Piper,* 185 Md. 314, 44 A. 2d 756.

The testator has the right to fix the period of vesting, and if he does so with reasonable certainty, his intention will be carried out. He can postpone the period of vesting and make it depend upon a contingency, and, if he does so, the estate will not vest until the happening of such contingency. *Cherbonnier v. Goodwin,* 79 Md. 55, 58, 28 A. 894. The most important rule of construction on the question when an estate was intended to vest is that the law favors the earliest vesting of estates. Where there is more than one period mentioned in a will, the court will generally adopt the earlier one unless this construction is contrary to the testator's intention as disclosed by the terms of the will. *Lee v. Waltjen,* 141 Md. 450, 119 A. 246; *Curtis v. Maryland Baptist Union Ass'n,* 176 Md. 430, 438, 5 A. 2d 836, 121 A. L. R. 1516; *Miller, Construction of Wills,* sec. 227.

It is an accepted rule that where there are two possible constructions, either of which can be adopted without straining the language of the will, the court will adopt that construction which disposes of the entire estate, rather than one which results in a total or partial intestacy. The will before us contains no residuary clause. The gift in remainder is to the members of one class, if any, but, if none, then to the members of another class or to designated individuals. A gift to a class has been defined as a gift of an aggregate sum to a body of persons uncertain in number at the time of the gift, to be ascertained at a future time, and who are all to take in

equal or in some other definite proportions, the share of each being dependent for its amount upon the ultimate number of persons. *Dulany v. Middleton,* 72 Md. 67, 77, 19 A. 146; *Jarman, Wills,* 6th Ed., 232; *Miller, Construction of Wills,* secs. 67, 237. Here the clause in dispute contains two alternatives, each inseparable ultimate limitations (1) to the children of John or (2) to other grandchildren of the testator. It is a general rule that if a gift violates the rule against perpetuities as to any member of a class, it is void as to all members of the class. If a gift is to a class, and the gift is good as to some members of the class, but is within the rule against perpetuities as to other members, the entire gift must fail. *Perkins v. Iglehart,* 183 Md. 520, 529, 39 A. 2d 672. The rule against perpetuities is that no interest is good unless it must vest, if at all, not later than 21 years after some life in being at the creation of the interest. Where property is rendered inalienable, or its vesting is deferred for a longer period than that prescribed by the rule, the law denounces the devise, bequest or grant as· a perpetuity.

The term "vested," as used in the law of property, signifies that there has been the fixation of a present right to either the immediate or future enjoyment of property. *Curtis v. Maryland Baptist Union Ass'n,* 176 Md. 430, 438, 439, 5 A. 2d 836, 121 A. L. R. 1516. The term "vested" has also another meaning, which is so frequently given to it that it cannot be styled improper. This other meaning is "transmissible." As Professor Gray of Harvard has said, "Such double meaning is, however, very unfortunate, as it has led to much confusion." *Gray, Rule Against Perpetuities,* 4th Ed., sec. 118. Vesting in that secondary sense is not sufficient to escape the rule against perpetuities. The interest must vest in the sense of becoming a vested remainder. The rule demands that the vesting in interest, not necessarily the vesting in possession or enjoyment, must occur within the prescribed period. If it were held in this case that the estate does not vest until the time for possession and

enjoyment, the limitation would be within the rule against perpetuities, for it might have been possible that John B. Reese would marry a woman not yet born at the time of the testator's death, and she might live longer than 21 years after John's death. The Court, in determining the commencement of a future interest, considers possible events, and does not look back upon events which have occurred to see whether the estate has extended beyond the prescribed limit, but looks forward from the time the limitation was made to see whether there was then, according to its terms, a possibility that it might so extend. The event, upon the happening of which the remainder is to vest, must be one that is certain to happen within the prescribed period, otherwise the limitation is void.

It is well settled that where there is a devise to a person for life, with remainders to his children, the remainders are contingent until one of such children is born; for a contingent remainder is one which is either limited to a person not in being or not certain or ascertained, or so limited to a certain person that his right to the estate depends upon some contingent event in the future. But when a child is born, and the remainderman is then ascertainable, the remainder immediately becomes vested, for a vested remainder is one which is limited to a person in being, whose right to the estate does not depend upon the happening or the failure of any future event. Hence, a devise to a certain person for life, and at his death to any child or children he may have, but in the event he should die without issue, his estate should go to a third person, gives a vested remainder to any child of the life tenant immediately upon its birth. As the law prefers to treat a remainder as vested rather than contingent, remainders are often held to be vested even though they may be defeated before the termination of the precedent estate and consequently may never be enjoyed in possession. If the contingency, which would cause a vested estate to be divested if it occurred, does

not occur, there is no divestiture, and the estate remains vested. *Bishop v. Horney,* 177 Md. 353, 9 A. 2d 597.

In this case the remainder to the issue of Charles and Francis Reese necessarily was contingent until the death of John without children, but there is no indication in the will that the testator intended the determination of the "issue" of Charles and Francis to be postponed until the death of John without children. Of course, if that had been his intention, then only those of the class who survived John would take. But in designating those who were to take, he added that they were to take as tenants in common and that the estate was to be divided among them *per capita.* Thus, it was his will that there was to be no survivorship after John's death, and there is nothing in the will to indicate that the principle of survivorship should apply prior to John's death. Compare *Hammond v. Piper,* 185 Md. 314, 44 A. 2d 756.

In addition, the word "revert," which is unusual in the context, is significant. This word suggests the idea that the estate was to return to designated persons who might inherit if the testator had no grandchildren through John. The will designates those to whom the estate should "revert" as the grandchildren who were the issue of his other two sons. The will does not restrict the devise to those who might be living when John died without children.

Moreover, there is no intimation in the will that the testator's daughter might marry and have children. On the contrary, the will contains a provision that she be taken care of by John or by the executors, and there is a suggestion that it might be necessary to provide for her in an institution. While the record does not throw any additional light on this provision, it might be rationally assumed that the testator suspected that Mary would not have issue. In any event he excluded from his "grandchildren" any possible children of Mary. It would be a plausible explanation of the word "revert" to hold that if John died without children, the issue of Charles and Francis living at the time of the testator's

death would take; *i. e.*, that "revert" means to return to designated persons, and not to go to a future class.

It is clear from the entire will that it was the testator's general intention that, after the life estates, his property should go to grandchildren. John's children were specially favored; but, if he had no children, then the issue of the other sons were to take. We are of the opinion that the testator had in mind those whom he knew, *i. e.*, those living at the time of his death. It is more likely that he intended his estate to go to them than to grandchildren, if any, who might be born after his death.

In order to effectuate this intention, we hold that the testator gave to his grandchildren (the children of Charles and Francis) who were living at the time of his death remainders contingent upon the death of John without leaving children. As all the remainders must vest, if at all, not later than John's death, it follows that there is no violation of the rule against perpetuities.

As the share of any of these grandchildren was devisable, appellant, as the sole legatee of her husband, is entitled to his share in the estate. The wife of Clement M. Reese is entitled to his share as his sole legatee. On the other hand, Donald Reese, son of Francis D. Reese, having been born after the death of the testator, is not entitled to any share in the estate.

We will therefore reverse the decree of the chancellor, and remand the cause for the passage of a decree ordering division of the trust estate into seven equal parts to be distributed as follows: one part to appellant, sole legatee of Rev. Clarence Herbert Reese, the only child of Charles A. Reese; one part to Helen Reese, legatee of Clement M. Reese; and one part to each of the five living children of Francis D. Reese born before the death of the testator.

> *Decree reversed and cause remanded for the passage of a decree in accordance with this opinion, the costs to be paid out of the estate.*

324

In the above opinion we have referred to Ellen Louisa Reese as the appellant. Since the filing of the appeal in this Court, it has been suggested to the Court that Ellen Louisa Reese died on December 17, 1947, and that Dorothy Chism is the executrix of her estate. Who is entitled to the share of Ellen Louisa Reese does not appear, and we leave that matter to be determined by the lower Court.