RINGGOLD *v.* CARVEL ET AL.

[No. 15, October Term, 1950.]

*Decided November 3, 1950.*

The cause was argued before MARBURY, C. J., DELA-PLAINE, COLLINS, HENDERSON, and MARKELL, JJ.

*K. Thomas Everngam* and *Clarence E. Martin* for the appellant.

*William D. Gould,* with whom were *Gould & Edmondson* on the brief, for the appellees.

DELAPLAINE, J., delivered the opinion of the Court.

This suit was brought in the Circuit Court for Queen Anne's County by Mary R. Ringgold, widow, to construe the will of Thomas R. Carville, deceased, for the purpose of determining the owners of a tract of land known as the Chew Farm on Kent Island.

The testator died in May, 1883. He had one son, Thomas W. Carville, and one daughter, Florence Carville Ringgold. The daughter, who predeceased her father, had one child, Rowland Carville Ringgold, the husband of complainant.

The will was made on March 24, 1883. It devises the farm to the testator's widow, Julia A. Carville, for life, then to his grandson, Rowland Carville Ringgold, for life, and then "to his children living at the time of his death, as tenants in common, in fee simple."

The will contains two residuary clauses, one for the personal estate, the other for the real estate. The residue of the real estate is devised to the testator's son, Thomas W. Carville, for life, and then "to his children living at the time of his death, as tenants in common, in fee simple."

The will then contains the following note: "The term children wherever it occurs above is intended to include grandchildren."

The testator's wife, first life tenant, died in 1904. The son, Thomas W. Carville, died in 1919 leaving two children, Arnold W. Carvel and Emajean Carvel. The grandson, Rowland Carville Ringgold, second life tenant, who was a resident of West Virginia at the time of his

death in April, 1947, had no children.  His widow and sole devisee instituted this suit against all persons who might possibly have any interest in the real estate in question.  Included among the defendants are Thomas W. Carville's two children and also his two grandchildren, Elbert N. Carvel and Genevieve C. Land.

The decree, from which complainant appealed, directed that upon the death of Rowland Carville Ringgold, second life tenant, the real estate passed under the residuary clause of the will to the children, including grandchildren, of the testator's son, Thomas W. Carville, and the owners are to be found among four of the defendants, Arnold W. Carvel, Emajean Carvel, Elbert N. Carvel and Genevieve C. Land, who by stipulation have made it unnecessary to determine which of the four are entitled to the property.

*First.*  Complainant contended that the devise is governed by the rule in Shelley's Case.  This ancient rule is that where a person takes an estate of freehold under a will, deed, or other writing, and in the same instrument an estate is limited either mediately or immediately to his heirs, the word "heirs" is a word of limitation of the estate and not a word of purchase, and the ancestor is entitled to the entire estate.  *Fulton v. Harman,* 44 Md. 251, 263; *Williams v. J. C. Armiger & Bro.,* 129 Md. 222, 226, 98 A. 542.  This rule, which was recognized for many years in Maryland for the construction of wills, was abrogated by the Legislature in 1912.  Laws of 1912, ch. 144, Code 1939, art. 93, sec. 348.  But as the statute was not retroactive, it was operative in 1883 when the testator died and his will was admitted to probate.

It was urged by complainant that the use of the words "children" and "grandchildren" in the will was tantamount to the use of the word "heirs."  We cannot accept that contention.  In 1883 this Court held in *Halstead v. Hall,* 60 Md. 209, 212, that the words "children" and "grandchildren" are, in their usual sense, words of purchase and not of limitation, and should always be so regarded unless the testator has unmistakably used them

otherwise.  In 1907 the Court, speaking through Judge Pearce, reaffirmed this rule by emphasizing that where there are two possible constructions, one of which would enlarge and the other restrict the meaning of the word "children," the Court was required to adopt that construction which would give effect "to the natural and primary meaning of the word, rather than to the arbitrary meaning placed upon it by an artificial rule of law." *Reilly v. Bristow,* 105 Md. 326, 333, 66 A. 262, 265.  In the instant case the intention of the testator that there should be a remainder is unmistakably clear, because the word "children" is followed by the words "living at the time of his death."

*Second.*  Complainant contended that the devise violated the rule against perpetuities, and hence her husband, Rowland Carville Ringgold, as the second life tenant, took an estate in fee simple absolute.  The object of this rule is to prevent the future vesting of an estate upon a contingency which is not certain to happen within 21 years, and a fraction of a year beyond to cover the period of gestation, after some life or lives in being at the creation of the estate.  Where property is rendered inalienable or its vesting is deferred for a longer period, the law denounces the devise, bequest or grant as a perpetuity and declares it void.  *Graham v. Whitridge,* 99 Md. 248, 275, 57 A. 609, 58 A. 36; *Perkins v. Iglehart,* 183 Md. 520, 526, 39 A. 2d 672; *Chism v. Reese (Reese v. Reese)*, 190 Md. 311, 320, 58 A. 2d 643.

Complainant contended that the members of the class of remaindermen who were entitled to take could not be determined until all of Rowland Carville Ringgold's children were dead, so that no other grandchildren could be added to the class.  We are unable to accept this contention.  The testator directed that upon the death of Rowland Carville Ringgold the farm should belong to his children "living at the time of his death."  Rowland Carville Ringgold never had any children, but if he had ever had children and grandchildren, the only ones who could take would be those who were living at the time

of his death. It is clear that the devise did not violate the rule against perpetuities, since the vesting of the remainder estate had to occur immediately after the death of either the testator's grandson or son, both of whom were in being at the time of the death of the testator.

*Third.* Complainant claimed that the devise of the remainder failed, and consequently the real estate descended upon the death of the life tenant to the heirs of the testator, namely the only son and the only son of the deceased daughter. The law is established that where there is a void devise and there is no residuary clause, the real estate descends to the heirs of the testator, and where there is a void devise and there is a residuary clause, the same rule prevails, i.e., the real estate passes to the heirs and not to the residuary devisee. *Orrick v. Boehm,* 49 Md. 72, 106; *Rizer v. Perry,* 58 Md. 112, 135; *Johns v. Doe ex dem. Hodges,* 33 Md. 515, 526. It is also true, as complainant asserted, that there is no distinction at common law between the case of a void devise and the case of a lapsed devise in regard to the question whether the estate passes to the heirs or the residuary devisee. In either case the estate passes to the heirs of the testator. *Tongue v. Nutwell,* 13 Md. 415, 428. But the law of lapsed devises, like the law of void devises, has no application to this case. A lapsed devise is a devise which fails to vest or take effect by reason of the death of the devisee during the lifetime of the testator. There was no death of any of the devisees during the lifetime of the testator in this case. This is not a case of a void devise or a lapsed devise, but a reversionary interest not attempted to be disposed of at all except by the residuary clause.

The remainder to the children and grandchildren of Rowland Carville Ringgold living at the time of his death was not given to any person then in being. In fact, Rowland Carville Ringgold was only six years old at the time of the execution of the will. This was a gift to a class. A gift to a class is a gift of an ag-

gregate sum to a body of persons who are uncertain in number at the time of the gift, but are to be ascertained at a future time, and who are all to take in equal or in other definite proportions, the share of each being dependent for its amount upon the ultimate number of persons. *Chism v. Reese* (*Reese v. Reese*), 190 Md. 311, 319, 320, 58 A. 2d 643, 647. Certainly the testator, if he was rational, must have thought of the possibility that his grandson might not have any children. It has been suggested that the reason why the testator did not give his grandson the absolute title, but instead gave the residue, in case his grandson had no children or grandchildren, to the children and grandchildren of his son, Thomas W. Carville, was because he wanted the farm to belong as long as possible to those of his own flesh and blood. However that may be, it is obvious that the members of either one class or the other, i.e., either the descendants of the grandson or the descendants of the son, were the objects of his bounty.

*Fourth.* Complainant argued that, even though the testator intended that in the event of the death of the grandson without issue the reversionary interest should pass under the residuary clause, it could not do so, because the law prohibited the testamentary disposition of such a reversionary interest. She built her argument upon the premise that the reversionary interest was a possibility of reverter. She then argued that the Maryland statute, which provides that all rights and possibilities of reverter shall be subject to be transferred by will, Laws of 1908, ch. 84, Code 1939, art. 93, sec. 332, was not retroactive, and hence did not apply to a possibility of reverter under the will probated in 1883. It is true that the Act of 1908 does not apply to wills that became effective prior to the Act, though it does apply to devises made after 1908 of possibilities of reverter that existed prior to 1908. *Evans v. Safe Deposit & Trust Co.*, 190 Md. 332, 346, 58 A. 2d 649. However, her argument collapses because, among other reasons,

the premise is false. The reversionary interest is not a possibility of reverter.

A possibility of reverter is any reversionary interest which is subject to a condition precedent. 2 Restatement, Property, sec. 154. When the owner of an estate in fee simple absolute transfers an estate in fee simple determinable, the transferor has a possibility of reverter. In other words, if one who has an estate in fee simple creates a determinable fee in another, he has thereafter merely a possibility of reobtaining the land by reason of the occurrence of the indicated contingency. Thus, where land is devised for a certain purpose, and it is the testator's intention that it shall be used for that purpose only, and that on the cessation of such use, the estate shall end without re-entry by the grantor, a possibility of reverter arises. At common law such a right is not an estate, present or future, but is a mere possibility of acquiring an estate, and is not devisable or assignable. The Maryland cases dealing with possibilities of reverter are mainly those in which land has been devised for a specified purpose, such as for a church, school or burial ground. In case of a diversion of the land from the purpose for which it was devised, the heirs of the testator may be entitled to have the land again by reverter. Thus, as pointed out in *Evans v. Safe Deposit & Trust Co.*, 190 Md. 332, 347, 58 A. 2d 649, a possibility of reverter is not created into an estate by a will or a deed, but is merely a possibility of acquiring an undisposed of estate.

It is clear that the future interest in this case is an estate in reversion. A reversion is any reversionary interest which is not subject to a condition precedent. 2 Restatement, Property, sec. 154. It is the residue of an estate left in the testator to commence in possession after the determination of some particular estate devised by him. Hence, a reversion arises whenever the owner of real estate devises or conveys an interest in it less than his own. The logical conception of it in the common law is that it is a return by operation of law to the

owner of a portion of that which he owned before and in reality had never lost. Thus, where a contingent remainder in fee is created by a devise, the reversion in fee is in the testator's heirs or residuary devisees until the remainder vests. *Crisfield v. Starr,* 36 Md. 129, 144; *Reid v. Walbach,* 75 Md. 205, 216, 23 A. 472. In *Marbury v. Bouse,* 187 Md. 106, 48 A. 2d 582, 166 A. L. R. 1272, where the testator gave the residue of his estate in trust for his widow for life, then for his children for life, with remainders to their issue, and then provided that upon the death of any child of the testator without issue living, such child's share should survive to the remaining children, it was held that the reversionary interest was a reversion, not a possibility of reverter.

The will under consideration devises a contingent remainder to the grandson's children and grandchildren living at the time of his death, and by the residuary clause gives the reversionary interest to his son for life with remainder to the son's children and grandchildren living at the time of his death. We hold that where there is a devise to one person for life with a contingent remainder to his surviving children in fee simple, and a residuary devise (including the reversion after the life estate) to another, and the life tenant had no children, the residuary devisee takes the fee simple as a vested remainder. In the language of Professor Tiffany, such a devise presents "a case of the limitation of a vested remainder subsequent to the limitation of a contingent remainder in fee simple." 2 Tiffany, Real Property, 3d Ed., sec. 333.

For these reasons we are of the opinion that the reversionary interest in the testator's real estate passed under the residuary clause of his will.

*Decree affirmed, with costs.*