GEORGE W. REID *vs.* JANE M. WALBACH, and others.

*Construction of Will—Contingent interest under Will.*

A testatrix made a devise in trust for her daughter J. M. W. for life, "and from and after her death, in trust for her child or children then living, to be equally divided between them, if more than one, and, in the event of the death of a child, living my said daughter, the issue thereof, if any, to succeed to the part of its parent." The residuary clause of the will is in the following words: "All the rest and residue of my property and of the property over which I have any control, including ready money, rents, dividends, and other moneys due me at the time of my death, after payment of my debts, funeral expenses, and expenses of administration shall be divided as follows: To my daughter C. one-half part thereof; to my daughter M. one-fourth part thereof; and to my daughter J. M. one-fourth part thereof; and, in the event of an insufficiency of said funds to pay said debts and expenses, the same is to be made up out of the property given to my said son T." HELD :

1st. That in the devise in trust for J. M. W. there being no provision made for the contingency of all her children dying in her life-time, leaving no issue, if that contingency should occur, the fee-simple in the property so devised would be undisposed of by the testatrix, unless said contingent interest passed under the residuary clause of the will.

2nd. That by the language used there could be no vested interest in the children until the death of the mother.

3rd. That the vesting being contingent upon the mother's death, and dependent upon who might survive her for the estate to vest in, the interest was a contingent interest only.

4th. That said contingent interest passed by the residuary clause of the will.

5th. That whatever passed to J. M. W. by said residuary clause passed to her absolutely, and was not subject to the trust imposed upon the property to her in the former part of the will.

6th. That the one-fourth given by said clause to the testatrix's daughter M. who had since died, passed to the children of M.

equally, and was not affected by an antecedent clause providing that the property therein before given to her should be held by her for life, and then go to her only two children, in the proportions of three-fourths to one, and one-fourth to the other.

Contingent estates of inheritance will pass by descent, and are also devisable.

APPEAL from the Circuit Court of Baltimore City.

The case is stated in the opinion of the Court. The twenty-fifth clause of the will of Mrs. Eliza Whelan reads as follows: "It is my will that the property hereinbefore given to my daughter, Mary Reid, shall be held and enjoyed by her for and during her natural life only, and after her death shall devolve on and belong to her child or children then living. If both of her children shall survive her, the oldest shall have one-fourth part, and the youngest three-fourths of said property, and if either of said children shall die, living my said daughter, the issue thereof, if any, shall succeed to the share of its parent."

The cause was argued before ALVEY, C. J., MILLER, ROBINSON, IRVING, BRYAN, FOWLER, and McSHERRY, J.

*James D. Cotter,* for the appellant.

The general intent apparent upon the face of this will is that Jane M. Walbach shall hold for life only, everything therein devised or bequeathed to her, and any particular intent inconsistent therewith must be controlled and overruled by that general intent. *Thompson, et al. vs. Young, et al.,* 25 *Md.,* 459; *Taylor vs. Watson,* 35 *Md.,* 524.

The fact that the residuary clause (28) is subsequent in local position in the will to clause (24,) while the 24th clause uses the term "the property *hereinbefore* given to my daughter, Jane Margaret Walbach," does

not militate against the construction contended for by the appellant, for the reason that when the twenty-fourth clause was framed, the residuary clause is not supposed to have been conceived in the mind of the testatrix, nor to have been an object of her attention. Her sole purpose in incorporating the residuary clause in her will was in order that she might not die intestate as to any property.

The privilege belongs to the Court to transpose the words of the will, so as to make them read in a manner conformable to what appears to be the general and predominating intention of the testator. *Linstead vs. Green,* 2 *Md.,* 89. The generality of words used in the residuary clause is restricted by antecedent bequests, even to the extent of confining the operation to personalty, and excluding realty. *McChesney vs. Bruce,* 1 *Md.,* 347; *Hambleton, et al. vs. Darrington, et al.,* 36 *Md.,* 446.

"The same reason will apply, not only to the kinds of property, whether real or personal, but to the nature of the estate, whether in possession or expectancy."

By a comparison of said residuary clause 28 with clause 25, the intention of the testatrix is manifested that all her devises and bequests to Mary Reid go after her death, one-fourth to Thomas W. Reid, (Mary A. Rajotte being his heir,) oldest child, and three-fourths to her youngest child, George W. Reid.

As to the phrase, "the property *hereinbefore* given to my daughter, Mary Reid," which appears in the 25th clause, it controls and governs the nature of Mary Reid's estate under the residuary clause (28,) for substantially the same reasons that control that phrase in the twenty-fourth clause, as affecting Jane M. Walbach's estate under the residuary clause. And accordingly as Mary Reid's two children, Thomas W. Reid and George W. Reid, did survive her, the older, Thomas W., would be entitled to one-fourth part, and the younger, George

W., to three-fourths part of any property passing to their mother under the residuary clause.

The furniture bequeathed to Jane M. Walbach under the 21st clause, clearly is subject to the trust clause, (24,) as it is property "heretofore given."

No difference in the construction of items can arise from the fact, that some relate to realty alone, while others include realty and personalty. *Heald vs. Heald,* 56 *Md.*, 308.

The testatrix cannot be said to have one intention as to realty and another as to personalty, when she uses the same words as to both. *McElfresh, &c. vs. Schley, et al.,* 2 *Gill,* 200.

*Thomas A. Whelan,* and *Edgar H. Gans,* (with whom was *B. Howard Haman,* upon the brief,) for the appellees.

By the limitation in the twenty-fourth clause of the will there can be no vested interest in the children until the death of the mother, as the property is to vest only in such children as may be living at the time of the mother's death. The vesting being contingent upon the happening of this event, the interest in the children, during the mother's life-time, is merely contingent. There is also an alternative contingent limitation to the issue of any child dying in the mother's life-time, to become vested if such issue be living at the time of the mother's death. That these limitations are contingent and not vested, is well settled by the recent Maryland cases. *Demill vs. Reid,* 71 *Md.*, 192; *Mercantile Trust and Deposit Co. vs. Brown, et al.,* 71 *Md.*, 170; *Larmour vs. Rich,* 71 *Md.*, 383–4; *Bailey vs. Love,* 67 *Md.*, 592; *Straus vs. Rost,* 67 *Md.*, 465; *Engel, et al. vs. State, use of Geiger,* 65 *Md.*, 544.

There is no provision, however, made for the contingency of Jane Margaret Walbach's dying without leaving children or issue living at the time of her death. If her

Reid *vs.* Walbach, *et al.*

·daughter, Jane B. Walbach, who is now unmarried, and her only child, should die before her mother, unmarried or without issue, then the only effective disposition of said property would be the life estate to said Jane Margaret Walbach. There is, therefore, a contingent fee-simple interest in said property undisposed of by the devises to Jane Margaret Walbach and her children.

This undisposed of contingent fee-simple interest passes under the residuary clause in the will.

"Contingent estates of inheritance as well as springing and executory uses and possibilities, coupled with an interest, when the person to take is certain, are transmissible by descent and *devisable.*" *Hambleton, et al. vs. Darrington, et al.*, 36 *Md.*, 444; *Spence vs. Robins,* 6 *G. & J.*, 513. This is not the case of a void devise, with respect to which there is a difference between real and personal estate as to whether the residuary clause will transmit the property, but it is a case of property *not otherwise disposed of,* and of which, unless it passes under the residuary clause the party would die intestate. "Every intendment is to be made against holding a man to die intestate who sits down to dispose of the residue of his property." *Dulany, et al. vs. Middleton, et al., Ex'rs, &c.,* 72 *Md.*, 76.

It is expresely decided in this State that *undisposed of property* will pass under a residuary clause, and that it is immaterial how it happens that any part of the property is undisposed of, whether by the death of a legatee, or by the failure of the testator to provide for all the events that may happen upon which the bequest may depend for its complete effect. *Barnum, et al. vs. Barnum, et al.,* 42 *Md.*, 311. Such is also the well settled English law. 2 *Jarman on Wills,* (5*th Am. Ed.,*) 240, 241, *et seq.; Beach on Wills, sec.* 263.

And the mere fact, however, that the devisee of the partial or contingent interest specifically devised, is also

the general residuary devisee, will not exclude him from taking the remaining interest in such lands in the latter character.   2 *Jarman on Wills*, 243.

The language in the residuary clause is, "all the rest and residue of my property and of property over which I have any control, *including*" the various funds there described.   This language is as broad as can be and includes by express terms not only her own property, but all the property over which she had any control. General language of this kind is sometimes narrowed when it is evident from other expressions used in connection therewith, that a more restricted signification is intended.   If instead of the word "including" the general language had been followed by such an expression as, "consisting of," then it would have been evident that the testator intended the general words to embrace only the enumerated articles.   *Cole vs. Ensor, et al.*, 3 *Md.*, 453.

But the natural meaning of the word "including" suggests that the general words, "all the rest and residue, &c.," embrace other things besides those specially designated.   The greater *includes* the less.   Things co-extensive cannot *include* each other.   Nor can there be any argument from the rule *"ejusdem generis,"* or *"noscitur a sociis."*   The word *"including"* never indicates likeness or similarity.   Thus, "I devise my house in fee-simple, *including* the furniture therein to B," presents an entirely correct use of the word.

In a bequest of the "residue of my property of every description," words describing the different kinds thereof are not by way of restriction, but of illustration. *Beach on Wills*, sec. 262.

The utmost that can be inferred from the language of the residuary clause charging the payment of debt, funeral expenses and expenses of administration upon the whole residue, and from the other language, "and

in the event of an insufficiency of *said funds*, &c.,'' is, that the testatrix was not actually conscious that there was any other residue than the funds.    But this is quite a different thing from the intention that nothing else should pass under the general residuary words.    The whole theory by which ineffectual bequests pass under a residuary clause is founded upon the conceded fact that the testator was unconscious of the ineffectual character of the bequest.    If he had known the bequest was ineffectual to dispose of the entire interest in the property he would have corrected it.    But even though the testator thinks a particular bequest effective to pass the entire interest in property to the specific legatees, and, therefore, that it will not pass under the residuary clause of it, the well settled rule, is, that if the bequest is ineffective so that there is an undisposed of interest, this interest will pass under the residuary clause, by virtue of the general intention of the testator that he should not die intestate.

It has several times been held in Maryland that property will pass under a residuary clause, although the testator had no knowledge that he owned or possessed such property.    *Dalrymple vs. Gamble,* 68 *Md.,* 528; *Stannard vs. Barnum, et al.* 51 *Md.,* 451; *Hambleton, et al. vs. Darrington, et al.,* 36 *Md.,* 434.

The whole will declares the unmistakable intention of the testatrix not to die *intestate,* with respect to any of her property.    By the very first words of the will she declares that, ''for the purpose of executing the powers vested in her by the last will of my deceased husband, over his estate, and which estate I will treat herein as parcel of my own property, and also of disposing of all other, my property and effects whatsoever, do make,'' &c.

All through the will the most exact care is observable in disposing of everything, even to a particularization of the various kinds of spoons, forks, salts, cups, and saucers, &c.

This intention, when clearly ascertained, is always deemed conclusive, as to the passing of all undisposed of interests by a residuary clause which contains apt general words.

The share of Cornelia Whelan, as residuary devisee, passed to Thomas Whelan under her will. There is no possible difficulty about this question. Cornelia Whelan, by her will, after certain pecuniary bequests, devises the residue of her property, as follows: "I give, devise and bequeath, absolutely, unto my brother, Thomas Whelan, all the rest and residue of the property and estate of every nature and kind, whether real, personal or mixed, including my silverware, china and glassware, which I now have, or which I may have, be possessed of, or in any manner entitled to at the time of my death." The residuary devisee, Jane M. Walbach, takes her share in the residue absolutely and free from the trust or under the trust, and therefore only for her life.

It is undoubtedly true that when any part of a residuary devise fails, the part failing will not go to increase the other portion of the residuum, as a residue of a residue, but will go to the heirs-at-law. *Church Extension of the M. E. Church, et al. vs. Smith, et al.*, 56 *Md.*, 398-9.

It is evident, however, that Jane Margaret Walbach takes an absolute interest in her share of the residue, for two reasons:

1. There is no possibility in a life tenant of a particular piece of property taking a life estate in an interest in that same property which can by its own nature arise only after the termination of the life estate. It involves a contradiction in terms. She is now life tenant of the whole property, and to have a life interest in a portion of the executory limitation would add nothing to her present life estate, and in reality is not susceptible of legal explanation.

2. Whenever the testatrix intends that Jane Margaret Walbach shall have property for life, subject to the trust, she so expresses herself.

The appellant, George W. Reid, claims that he, as the youngest child of Mary Reid, is entitled to three-fourths of his mother's share in the residue. This claim is based upon the language of the twenty-fifth clause of the will. Both children survived the mother. Now, though it is probably clear under this clause, George W. Reid takes three-fourths of all the property *"hereinbefore given"* to Mary Reid, there is nothing in the will to show that he was to get three-fourths of any property thereafter given to Mary Reid. The residuary clause is number 28 in the will and therefore after the 25th clause. We know of no principle of law by which *hereafter* can be construed as synonomous with *heretofore,* and therefore George W. Reid, and the heirs of Thomas W. Reid, take the share of Mary Reid in the residue equally, share and share alike. *Wood vs. Conrey,* 62 *Md.,* 546.

IRVING, J., delivered the opinion of the Court.

In the execution of a power of appointment in the will of her husband, Mrs. Eliza Whelan made a will and died in 1867. The will contains thirty clauses; and there are four codicils. The provisions of this will and these codicils give rise to the questions presented in this case.

By this will and these codicils certain property was given to Jane M. Walbach, a daughter of the testator, and a married woman, and to her sole and separate use; and Francis W. Elder and Thomas Whelan were appointed trustees to hold and manage the property for Mrs. Walbach. After proceedings in equity in the Circuit Court in Baltimore City, two parcels of the real estate devised in trust for Mrs. Walbach were decreed to be sold for better investment, and sales were made. But in the proceedings for the sale of one of these parcels certain

persons now supposed to have been necessary parties defendant, were not made parties; and the case now under review was instituted for the purpose of getting the sales made ratified by the Court after bringing all necessary parties before the Court; and to get the Court to assume jurisdiction of the trust, and to appoint a trustee in the place of Thomas Whelan, deceased, and F. W. Elder, resigned; and to construe certain clauses of the will, and to direct the new trustee who shall be appointed in the place of Thomas Whelan, deceased, and Francis W. Elder, trustee, (who resigned and was released,) as to the distribution of the funds.

The clauses of the will requiring consideration are the tenth, the twenty-first, the twenty-fourth, the twenty-fifth, and twenty-eighth; and the first, second and fourth codicils.

The tenth clause reads thus: "I give and devise to my daughter, Jane Margaret Walbach, the dwelling house and lot, (my present residence,) on the west side of Charles street in said city;" and the twenty-fourth clause is as follows: "It is my will that the property herein before given my daughter, Jane Margaret Walbach, shall be held by, and the same is hereby given to, my friend, Francis W. Elder, in trust for the sole and separate use of my said daughter for and during her natural life, so that the same and all the rents and profits thereof as they may accrue, may be taken and enjoyed by her as a *féme sole*, and free from the control of her present or future husband, and without being in any manner liable for his debts; and from and after her death in trust for her child or children then living, to be equally divided between them if more than one, and in the event of the death of a child, living my said daughter, the issue thereof, if any, to succeed to the part of its parent."

By the third codicil to the will Thomas Whelan, Jr., was appointed co-trustee with Francis W. Elder to execute the trust.

By the second codicil, and first 'clause thereof, the testator says: "I give and devise a lot of ground on Federal Hill to my daughter, Jane Margaret Walbach, and her children, to be held and enjoyed by her and them in like manner as the real estate given to her and them by my last will is directed and appointed to be held and enjoyed."

In the fourth codicil Eliza Whelan, the testatrix, devises as follows: "Whereas, in and by my last will I have given and devised to my son, Thomas Whelan, Jr., the warehouse and lot lying on the north side of Baltimore street in the City of Baltimore then occupied by Messrs. F. R. Waesche and Co., and others, and also the three feet alley in the rear of said lot and leading thence to Charles street. Now I do hereby revoke the said devise and in lieu thereof do hereby give and devise the said warehouse and lot and said alley unto the said Thomas Whelan, Jr., and to my daughter, Jane Margaret Walbach, and their heirs as tenants in common in the following proportions; that is to say, to my son two parts in three, and to my said daughter one part in three to be divided, and I give the part so intended for my said daughter unto my said son, and to my friend, Francis W. Elder in trust for my said daughter and her children and descendants in manner and form precisely as she and they are to have and enjoy the property which I have given to her or them, or in trust for her or them by my said last will and the codicil thereto heretofore made by me." Clause 28 of the will is a residuary clause in the following language: "All the rest and residue of my property and of the property over which I have any control, including ready money, rents, dividends, and other moneys due me at the time of my death after payment of my debts, funeral expenses and expenses of administration shall be divided as follows: To my daughter, Cornelia, one-half part thereof; to my daughter, Mary,

one-fourth part thereof, and to my daughter, Jane Margaret, one-fourth part thereof; and in the event of an insufficiency of said funds to pay said debts and expenses, the same is to be made up out of the property given to my said son Thomas.''

The Charles street property and the Federal Hill property have been sold under decree of the Court in separate proceedings, but the Baltimore street property has not been sold.

The first question for consideration is, was there any contingent interest in the property given in trust for Jane Margaret Walbach left undisposed of? The Court below decided there was, and in that conclusion we fully concur. The property is given in trust for Jane Margaret Walbach during her life, and after her death in trust for her child or children then living, and in the event of the death of any child during the life of the mother the issue of such child to take the part of the parent. It is plain that there is no provision made for the contingency of all the children dying in the life-time of the mother leaving no issue. Should that condition of things occur it is evident that the fee-simple in these three pieces of real estate are undisposed of by the testatrix unless that contingent interest passes under the residuary clause of the will. By the language used there can be no vested interest in the children until the death of the mother, for it is to vest only in such children as may be living when the mother dies. The vesting being contingent upon the mother's death, and dependent on who may survive her, for the estate to vest in, the interest is a contingent interest only. *Demill vs. Reid, et al.,* 71 *Md.,* 192; *Larmour vs. Rich, et al.,* 71 *Md.,* 369; *Bailey vs. Love,* 67 *Md.,* 592; *Straus vs. Rost,* 67 *Md.,* 465; *Mercantile Trust and Deposit Co. vs. Brown, et al.,* 71 *Md.,* 170; *Engel, et al. vs. State, use of Geiger,* 65 *Md.,* 544. Mrs. Walbach is an old woman having but one

child—a daughter thirty-eight years old and unmarried, and if she was to die before her mother, and without issue, the life estate of the mother would be the only effective disposition as to those pieces of property. This contingent fee simple interest the Circuit Court decided, passed by the residuary clause, and in this view we agree also.  Contingent estates of inheritance will pass by descent and are also devisable. *Spence vs. Robins*, 6 *G. & J.*, 513; *Hambleton, et al. vs. Darrington, et al.*, 36 *Md.*, 444.

This is a case where the testatrix, having failed to dispose of a certain contingent, and possible interest in the estate by special gift, we are asked to decide whether she is to be regarded as having died intestate thereof, or shall be regarded as having disposed of the same by the residuary clause of the will.  In *Booth vs. Booth*, 4 *Vesey*, 407, Lord ALVANLY says, "Every intendment is to be made against holding a man to die intestate who sits down to dispose of the residue of his property."  And this view is adopted by this Court in *Dulany, et al. vs. Middleton, et al.*, 72 *Md.*, 76.  In *Barnum, et al. vs. Barnum, et al.*, 42 *Md.*, 312, this Court expressly decided that undisposed-of property will pass under a residuary clause of a will, no matter how it happens that any part of the property is not disposed of by the special provisions of the will.  It may be that the testator may not know that he or she is leaving any thing unprovided for.  Even if the testator does not know that the property undisposed of actually belongs to him, it will pass by a residuary clause sufficiently comprehensive in language to embrace it. *Vide Barnum, et al. vs. Barnum, et al.*, *supra.*  It has been suggested that the language of the residuary clause, in this will, is not comprehensive enough, but contains language which so narrows its effect and operation as to exclude this contingent estate.  The language relied on for this contention is as follows: "All the rest and residue of my property, and of the property over which I have

any control, *including* ready money, rents, dividends and
other moneys due me at the time of my death," &c.   The
particular kind of property which is intended to be cov-
ered by this provision, it is suggested, is here indicated
as being moneys or funds.   The word *"including"* is
sought to be given the meaning of "consisting of," and
thus to designate what and what only was to pass by
that clause.   We do not think this a fair, natural, or
reasonable construction of the language used.   It begins
with the language, "all the rest of my property, and of
the property over which I have any control," and then
follows the language about the moneys.   She evidently
intends disposing of all the balance of her own property,
and all the balance of that which she had the control
over, by appointing the takers thereof.   The words which
are added were added by way of indicating that money
was to be regarded as property within her meaning, and
excluding the possible idea and conclusion that it was
not intended to be included.   Undue anxiety that *all*
should be included has given rise to a contention that
would not have arisen but for the effort to be more explicit
than was necessary.   The use of the word "including"
shows that the testatrix meant to put in something be-
sides what was specially designated by the first words
used.   In charging the payment of debts and funeral
expenses upon what was put into this residuary clause,
and, if any deficiency, putting its payment on Thomas
Whelan from what was given him, it is argued that this
contingent estate can not be supposed to have been
intended as included.   It is very possible that the testa-
trix did not know she had made such an omission, in
disposing of the real estate already mentioned, as to leave
the fee in certain contingencies unprovided for; but that
does not make any difference.   *Dalrymple vs. Gamble,
et al.,* 68 *Md.,* 528; *Stannard vs. Barnum, et al.,* 51 *Md.,*
451; *Hambleton, et al. vs. Darrington, et al.,* 36 *Md.,*

446.   The intention not to die intestate of any thing is clearly manifested in the disposition she makes of even small articles mentioned in the will.   Another question has arisen under this residuary clause, and that is, how and in what proportion the distribution under it is to be made.   The appellant contends, that under that clause Jane M. Walbach takes an interest, and that her interest *is only for life;* and it is further contended that Geo. W. Reid takes ($\frac{3}{4}$) three-fourths of his mother's (Mary Reid) share, and that the heirs of Thomas Reid take one-fourth thereof.   As a daughter of the testatrix, and named as one of the legatees, Jane M. Walbach takes a share of the residue, and the question is, does that interest go in trust and for life only.   There were four children, and Jane M. Walbach's share is named as one-fourth of this residue.   As that undisposed-of interest cannot arise till after Mrs. Walbach's death, it would be a contradiction to say her share thereof is for life only, when such interest cannot in fact exist; and unless the language was so express that such construction was unavoidable it ought not to be adopted.   But there is no difficulty about it.   The clause creating the trust confirms the *trust* to the property hereinbefore given Mrs. Walbach.   It does not attach to any property or interest given in a subsequent clause of the will.   Whatever passed to her by the residuary clause of the will clearly passes to her absolutely, and unfettered by the trust. The twenty-fifth clause of the will, which directs the method of distribution between the children of Mary Reid, if both of them should survive her (for there were but two) confines the direction of distribution to the property hereinbefore given to the mother, and cannot by any fair construction be made to apply to and include property thereinafter given.

By the word "hereinbefore" that only is intended and included which had already been given, and that which

is *afterwards* given cannot be held as controlled by the direction in the 25th clause of the will.    Argument cannot make that plainer.

Cornelia Whelan under the residuary clause takes one-half of the residue.  By her will after certain pecuniary bequests, she gives all the residue of her property to her brother Thomas Whelan, and there can be no doubt that he succeeds to her interest under the residuary clause of the will.

The appellant contends that the interest in the furniture, set of china, and pew in the Cathedral pass to Mrs. Walbach for life only, and are controlled by the trust. We see no ground for this contention, and think the Circuit Court was right in decreeing Mrs. Walbach's interest in those things or their proceeds was absolute and freed from the trust.    The argument is that, as the furniture was given by the 21st clause of the will, it is included in the property described in the 24th clause as "property hereinbefore given," to which the trust by that clause is made to attach.    However plausible that contention might be if there were no other provisions afterward made, the subsequent provisions in the codicils relieve the matter from doubt.

By the first codicil, reciting the disposition in the will of the furniture, she speaks of it as being intended for her daughter Jane and her sister Mary, without any qualification whatever; and then after stating that she had loaned this furniture to her daughter Jane, she says: "Now I do hereby will and direct that all the articles which I have so loaned to my said daughter Jane, or which I may hereafter loan to her, shall on my death, go to and I hereby give and bequeath the same to my said daughters Jane and Mary." By this last expression of her will and wishes she gives the furniture loaned to Jane to her and her sister absolutely.    She could not have intended a part to be in trust and a part to be an absolute

gift.    This codicil reflects light on what was originally
intended, and shows that the trust was only intended to
apply to the real estate.    It is very like the case of *Wood
vs. Conrey,* 62 *Md.,* 546, where the Court held that certain
furniture named in the will was not subject to a limita-
tion over, but that the limitation only applied to the real
estate.    The china is given without qualification by the
second codicil, and the interest in the pew in the Cathe-
dral is similarly given in the third codicil.    These gifts
are absolute and subject to no trust.    It is worthy of
note that whenever by codicil any thing is given to Jane
M. Walbach, in which it was the wish of the testatrix
that she should take only a life estate, and be subject to
a trust, the qualification of the gift is expressly made.
Having expressed the wish as to part, that about which
no such wish is expressed is excluded.    *Expressio unius
exclusio alterius.*

The decree appealed from ratified the sale of the
Charles street property and the Federal Hill property,
and the investments made of the proceeds.    No objec-
tion has been made in this Court to the action of the
Court below in this regard.    In the case of the sale of
the Federal Hill property all persons having any inter-
est, vested or contingent, were made parties to the pro-
ceeding, and no reason has been assigned why that sale
was not advantageous and proper.    As to the sale of the
Charles street property, it was shown to be advantageous
to the parties, and it was admitted to be to the interest
of all that it should be confirmed.    The purchaser
supposed when he bought that he bought all the interests
of all the parties.    Those who were not original parties
having been brought in, offer no objection to the ratifica-
tion of the sale, and that action of the Court as to that
sale will also be approved.

*Decree affirmed.*