SMITH *v.* MERCANTILE TRUST COMPANY OF BALTIMORE, SURVIVING SUBSTITUTED TRUSTEE ET AL.

[No. 90, October Term, 1951.]

*Decided February 8, 1592.*

The cause was argued before MARBURY, C. J., and DELAPLAINE, COLLINS, HENDERSON and MARKELL, JJ.

*George Ross Veazey* and *George M. Radcliffe* for the appellant.

*J. Crossan Cooper, Jr.,* with whom were *Venable, Baetjer & Howard* on the brief, for the Mercantile Trust Company of Baltimore.

*J. Royall Tippett, Jr.,* with whom were *Hinckley & Singley* on the brief, for the Hospital for Consumptives of Maryland, remainderman under the last will and testament of Gabrielle Edmondson Gambrill.

MARBURY, C. J., delivered the opinion of the Court.

The question involved in this case is the proper disposition of the accumulated income of a trust established by the codicil to the will of Gabriel D. Clark, Jr. The testator was a native of Maryland, having been born in 1837 in the City of Baltimore. He attended preparatory schools in Baltimore, then graduated from Princeton University, and, after one term in the Harvard Law School, he continued the study of law in Baltimore, but apparently never practised. He was married in Baltimore to Emma Edmondson in 1869. His only child, Gabrielle Edmondson Clark, was born in 1870. His wife died in 1872, and for the next seven years Mr. Clark traveled extensively. Sometime later, he married the second time, this wife being Josephine Goguen, a resident of Canada. In 1896, they acquired a residence on 72nd Street in New York, and there Mr. Clark lived until he died in 1910. He was buried in New York. During the period from 1898 to 1909, there were thirteen deeds recorded in Baltimore which in each case recited that Mr. Clark, the grantor, was a resident of the City of New York. On October 13, 1908, he executed his last will and testament in New York, describing himself therein as "of the City of New York". On April 22, 1910, he executed a codicil, also in New York.

Mr. Clark was survived by his second wife, Josephine, who subsequently remarried a Mr. Martin, and by his

268

child, formerly referred to, Gabrielle Edmondson Clark, who married Chauncey Gambrill of Baltimore, in 1892. The only child of Gabrielle E. Gambrill, Helen Edmondson Gambrill, now Helen Edmondson Smith, and the appellant herein, was born in 1894, so that she was approximately fourteen years old at the time testator executed his will.

The will and codicil were admitted to probate in the Surrogate's Court of New York County on October 13, 1910, and letters were issued to Wilton Snowden and Gabrielle E. Gambrill, Executors, by that court. The following year, an authenticated copy of the will and codicil, and a certificate of the New York probate were filed in the office of the Register of Wills in Baltimore City. An administration account was filed in the Orphans' Court of Baltimore to dispose of a $3,000 mortgage on realty located in Baltimore. The remainder of the estate, which was quite a large one, was distributed under the jurisdiction of the Surrogate's Court of New York County.

By the third clause of the will, the residence on 72nd Street in New York, and the furniture and household effects therein, were devised and bequeathed to the testator's wife, Josephine, for and during her natural life. By the sixth clause of the will, the executors were directed to set aside out of the securities of the estate 200 bonds of the par value of $1,000 each, and bearing interest at 4% per *annum*, and to pay the gross income from the date of the testator's death to his widow during her natural life, "and upon the death of my said wife to pay over the said Two Hundred bonds together with all arrearage of income thereon unto my daughter Gabrielle Edmondson Gambrill, *for her own use and benefit forever.*" (Emphasis supplied.) By the eighth clause of the will, all the rest, residue and remainder of the estate of every kind and nature and wheresoever situated, was given, bequeathed and devised to the testator's daughter, Gabrielle, *for her own use and benefit forever.* In the event of her death, leaving issue, before that of

the testator, the residue was left to her issue *per stirpes.* By the twelfth clause, the trustees (who were the same as the executors) were authorized to remove the stocks, bonds or securities set apart for the benefit of his wife as provided in the sixth clause of his will, "irrespective of any statutory provision, or the rules of any Court of Equity in regard to trust estates or funds, but I desire and do hereby direct that the trust estate hereinbefore created and declared shall be administered under the supervision and control of a Court of Equity either of the State of New York or of the State of Maryland." By the codicil, the testator directed his executors to put aside such a number of bonds belonging to him at the time of his decease, the interest from which should be sufficient to enable them to pay all taxes and insurance on the 72nd Street house, and also all taxes levied or accruing against or upon the income he had settled on his wife, so that she should receive the income from the 200 bonds of $1,000 each, referred to in the sixth clause of the will, free of all encumbrances or deductions, and also live in the 72nd Street house, if she wished to do so, free of all expenses of taxes and insurance. The codicil then provided: "I also order and direct that the said bonds put aside for the purpose of paying said taxes and insurance, at the death of my wife, Josephine Agnes Clark, shall be paid over to my daughter, Gabrielle Edmondson Gambrill, for her own use and benefit, *or in case of her death, to her* heirs." (Emphasis supplied.)

The trustees, in pursuance of the permission granted by clause twelfth of the will, removed the securities from New York to Baltimore, and administered the trust under the jurisdiction of the Circuit Court of Baltimore City. In the course of this administration, it became apparent that the income from the bonds set aside under the codicil was more than sufficient for the purposes defined, and, in December, 1933, the widow, then Josephine A. Martin, filed a petition in the Circuit Court requesting that the surplus from the codicil fund be

distributed to her. This petition was answered by Helen Edmondson Smith, who stated that the time had not yet arrived for determining who might be entitled to the surplus from the codicil fund. A compromise agreement was then entered into on May 31, 1935, between Mrs. Martin, the trustees who were at that time the Mercantile Trust Company, and Wilton Snowden, Jr., Gabrielle Edmondson Gambrill, and Helen Edmondson Smith, individually, and as guardian *ad litem* for Margaret Gambrill Smith and George Tyler Smith, infants. By the terms of this compromise agreement, Mrs. Martin was paid $2,800 from the accumulated income in the codicil fund, in full settlement of all claims to any share in said income on account of income taxes paid by her up to the tax year of 1934, and for the future years Mrs. Martin was to be paid the amount of the taxes heretofore paid by the Mercantile Trust Company, and, in addition part of her income taxes, all of this coming from the codicil fund. This agreement did not attempt to decide the disposition of any surplus income accumulated in the fund over and above that to be paid to Mrs. Martin.

Gabrielle E. Gambrill died on August 11, 1941, leaving her daughter, Helen Edmondson Smith, the appellant, as her only heir at law. Mrs. Gambrill left a will which made some special dispositions, and then gave all the rest and residue of her estate to the Mercantile Trust Company to pay the net income to her daughter, Mrs. Smith, for her natural life, and, after the death of Mrs. Smith, she directed that the trust cease and the *corpus* should be paid over absolutely to the Hospital for Consumptives of Maryland. At the time of her death, the Mercantile Trust Company, which was then the sole surviving substituted trustee under Gabriel D. Clark's will, had in its hands $42,861.36, representing the excess undistributed income from the codicil fund. Mrs. Gambrill's estate was valued at $1,276,016.76. In none of the inventories or the administration accounts filed by

the Mercantile Trust Company was this excess income included as a part of the estate of Mrs. Gambrill.

Mrs. Martin died on February 1, 1949, and, at her death, the surplus income in the codicil fund had increased to $58,786.96. After her death, the Mercantile Trust Company, trustee under the Clark will, distributed the *corpus* of the codicil fund to Mrs. Smith, but filed a bill of complaint in the Circuit Court, requesting the guidance of the court in determining who was entitled to the accumulated income from this fund. This bill of complaint was answered by Mrs. Smith and by the Hospital for Consumptives of Maryland, and, after a hearing, the chancellor declared that the accumulated income, up to the date of the death of Mrs. Martin, passed under the residuary clause of the will of Gabriel D. Clark, became part of the estate of Gabrielle E. Gambrill, and passed to the Mercantile Trust Company, trustee of her residuary estate. From that decree, Helen Edmondson Smith appealed to this court.

The primary question (although it may not affect the result) is whether the law of New York, the domicile of Mr. Clark, is applicable, or whether the law of Maryland is made applicable by Article 93, Sec. 350, of the Code of Public General Laws. The main question is whether the accumulation in the codicil fund follows the *corpus* of that fund, and is payable to the appellant, as the heir of her mother, or whether it passes through the two residuary clauses of Mr. Clark and of Mrs. Gambrill to the Mercantile Trust Company, as trustee of Mrs. Gambrill's estate.

It is provided by Sec. 350 of Article 93 of the Code of Public General Laws that:

> "Every will or other testamentary instrument executed without this State in the mode prescribed by law, either of the place where executed or of the testator's domicile, or according to the forms required by the law of this State shall be deemed to be legally executed, and shall be of the same force and effect as if executed

in the mode prescribed by the law of this State, provided, said last will and testament is in writing and subscribed by the testator; and if the testator was originally domiciled in Maryland, although at the time of making the will or at the time of his death he may be domiciled elsewhere, the said last will or testamentary instrument so executed shall be admitted to probate in any orphans' court of this State; and when admitted shall be governed by and construed and interpreted according to the law of Maryland, without regard to the *lex domicilii*, unless the testator shall expressly declare a contrary intention in said will or testamentary instrument."

This same statute was an amendment to Sec. 319 of Article 93 as the same appears in the Code of 1888, and the last part of it, which is that which provides that in some cases a will executed elsewhere may be interpreted according to the law of Maryland, was first passed by Chapter 151 of the Acts of 1894. It was passed in its present form by Chapter 238 of the Acts of 1914, and it has been interpreted in several cases by this court. One of these cases was *Lindsay v. Wilson*, 103 Md. 252, 63 A. 566, 2 L. R. A., N. S., 408, decided in 1906, before the Act of 1914 took effect. That case had to do with real estate located in Maryland. Another case, which is the one primarily relied on to justify the contention that the interpretation of the will before us should be under the law of this state, is *University v. Uhrig*, 145 Md. 114, 125 A. 606. That case involved securities actually in Maryland in the possession of a resident. It has some similarities to the case before us in that the testator was a former resident of Maryland who had gone to California to live and had died while domiciled there. The Safe Deposit & Trust Company of Baltimore was executor, to administer that part of the estate outside of the State of California, while another executor was appointed to administer the assets within that state. The will was probated in California, and then a copy

was filed in Maryland under Secs. 351 and 354 of Article 93. The court held that this was sufficient under Sec. 350 of Article 93 to justify the interpretation of the will under the Maryland law as to the Maryland assets. The importance of this was that there was a residuary bequest of more than one-third of the estate of the testator left to the Johns Hopkins University, and the California law prohibited such a bequest of more than one-third. In the recent case of *Roach v. Jurchak,* 182 Md. 646, 35 A. 2d 817, we had before us a case where a former resident of Maryland, domiciled in Pennsylvania, had left all his property, including his real estate in Maryland, to someone other than his widow and children. His will was admitted for probate in Pennsylvania, and then an authenticated copy was offered for record in the Orphans' Court of Allegany County, Maryland. The widow attempted to caveat, but we held that the will having been admitted in Pennsylvania, the probate had to be given full faith and credit here, and that Sec. 350 of Article 93 did not apply under the circumstances.

It will be noted that all of these cases affect a situation where the testator had property in Maryland which was administered by exercutors or administrators in Maryland. We do not think that the Legislature intended by the enactment of Sec. 350 to cover property which was outside of the State at the time of the testator's death. Mr. Clarke was domiciled in New York, and his assets were there, and in the ordinary course of events, the law of the State of New York would govern their disposition and determine who was entitled to them under his will. To say that without any direction by the testator, his executors could prove his will in Maryland and thereby possibly change the rights of the parties taking under it, would be to leave to the judgment or caprice of the executors the determination of property rights. Of course a testator could direct that his personal bequests be construed according to the laws of his home state, or of any other state, and those who took under his will, with such a direction included, would take sub-

ject to the law of such a state. Mr. Clark, however, did no such thing. He provided only that his trustees, both of whom were residents of Maryland, might remove the securities to Maryland if they thought it advisable to do so. He provided that the trust should be administered under the authority of an equity court, and he left to his trustees the determination whether that court should be in New York or in Maryland, but he did not say that it was to be administered under the laws of Maryland, and we do not think that Sec. 350 is applicable to his assets which were in New York at the time of his death. The removal of the assets and the administration of the trust were obviously for purposes of convenience only. His testamentary estate was all administered on in New York, except for the auxilliary administration, taken out in Maryland to dispose of a small mortgage which he had in this State. It was not until later that the trustees brought the trust assets to Baltimore and placed them under the jurisdiction of the Circuit Court of Baltimore City.

It is the uniform policy that a trust left to be administered in a state other than that of the domicile of the testator, which is invalid by the domiciliary law, but valid by the law of the state where it is to be administered, is held valid by the courts of the domiciliary state. *Vansant v. Roberts,* 3 Md. 119. *Hope v. Brewer,* 136 N. Y. 126, 32 N. E. 558, 18 L. R. A. 458; 19 *Harvard Law Review* 457. *Restatement, Conflict of Laws,* Paragraphs 295, 306. *Fletcher v. Safe Deposit & Trust Co.,* 193 Md. 400, 67 A. 2d 386. This principle, adopted both in Maryland and in New York, does not apply strictly to the case before us, but if the will had been originally probated in Maryland with the trusts created to be administered in New York, it cannot be doubted that this court would construe these trusts under the law of New York. There would seem to be no reason to depart from this general principle in this case, and we are unable to construe Sec. 350 as creating an exception to it.

The English decisions (not however controlling in this country) until changed by statutes held that accumulations in a fund, not used for the purpose for which it is left, "follow the fate of the principal, whatever that may be." *Hanson v. Graham,* 6 Vesey 239, decided in 1801. Accumulations were valid in England, and in this country, under the common law, up to the limit fixed by the rule against perpetuities. *Woodford v. Thellusson,* 4 Vesey 227. *Gertman v. Burdick,* 75 U. S. App. D. C. 48, 123 F. 2d 924, 152 A. L. R. 645. However, a number of states restricted them to a lesser period or for only certain purposes. In New York, they were prohibited unless for the benefit of minors. New York Real Property Law, Sections 61 and 62. New York Personal Property Law, Section 16. But where rents and profits of real estate are undisposed of, and no valid direction for their accumulation is made, such rents and profits belong to the persons presumptively entitled to the next eventual estate. New York Real Property Law, Section 63. This is made applicable to personal property by New York Personal Property Law, Section 11. The provisions of Section 63, which appellant claims is controlling here, are as follows: *"Undisposed profits.—* When, in consequence of a valid limitation of an expectant estate, there is a suspension of the power of alienation, or of the ownership, during the continuance of which the rents and profits are undisposed of, and no valid direction for their accumulation is given, such rents and profits shall belong to the persons presumptively entitled to the next eventual estate."

This statute is discussed at length and its history given in *In Re Shupack's Estate,* 1936, 158 Misc. 873, 287 N. Y. S. 184, 190. The Surrogate in that case said that the operation of the section (then 110 years old) was "confined to the limited situations particularly described therein, where a valid trust has been created but a portion of the income thereof has not been made the subject of lawful direction." He listed three conditions precedent to its application:

(1) A valid limitation of an expectant estate involving suspense of power of alienation or ownership. (2) A failure to direct the disposition of the full income during such period. (3) No valid direction for accumulation.

Appellant contends that, as she is entitled to the next eventual estate under the codicil of her grandfather, the accumulated income should follow the principal of the codicil fund, and be paid to her as the heir of her mother, Gabrielle Edmondson Gambrill. There might be some question whether in any event, she would be entitled to the accumulations prior to her mother's death, but, passing this point, we meet immediately the issue whether Section 63 applies to this estate, or whether the residuary clause in the will is a sufficient direction of the disposal of the surplus income.

In *Ellingwood v. Bears,* 59 How. Prac. 503, the New York Supreme Court, in 1880, held that a specific fund should carry its own accretions, and decided against the claims of those interested in the residue of the estate. The court said there were cases holding otherwise, and it had some doubt about it, but concluded that this was what testator intended. He, and not the trustees, had fixed the amount of the trust. A Surrogate's Court case, *In Re Spitz's Will,* 129 Misc. 78, 220 N. Y. S. 816, 819, decided in 1927, held that where there were legacies to two sons and a daughter of testator to be paid after the death of his wife, and no provision for payment of income on these legacies pending the time of obtaining possession by the legatees, such income could not lawfully be accumulated and must be paid to those entitled to the next eventual estate under Section 63. The will contained a provision for a trust of the residue of the estate, but this was held invalid, and the residue was distributed "as in a case of intestacy". Had the accumulation gone into the residue, it would, of course, have likewise been distributed as if the testator had died intestate as to it. In *In Re Friday's Will,* 1933, 148 Misc. 899, 266 N. Y. S. 590, 592, decided by the

Surrogate's Court of Kings County, the testator directed his trustees to pay net income, or so much as might be necessary, for the support of his widow. Upon her death, the principal of the trust was given to his two sons. There was no direction for accumulation. It was held that the accumulation did not belong to the life tenant, but that "the law intervenes and declares that it shall pass to the next eventual estate which is bequeathed to testator's sons." The Surrogate's Court of Westchester County, in 1940, decided *In Re Ball's Will*, 24 N. Y. S. 2d 432, 435. In that case, the residue of the estate was left for the benefit of testator's wife, to yield her an income of $1,000 a month. The balance of the residue was distributed to testator's son. The excess income was distributed under Section 63 to the person entitled to the next eventual estate "who, in this case, happens to be the son."

Two other cases relied on by appellant are *Fitchie v. Brown*, 211 U. S. 321, 29 S. Ct. 106, 53 L. Ed. 202, where the trust was the residue of the estate, and *Thurber v. Thurber*, 43 R. I. 504, 112 A. 209, where the same situation existed. The appellee trustee points out that not only in these cases, but also in the *Spitz* and *Ball* cases, *supra*, there was either no residuary clause in the will, or the trust was part of the residue, so that any different holding would have compelled a finding of partial intestacy, which the courts avoid if possible. It states that, except in the early case of *Ellingwood v. Beare*, *supra*, there is no New York case which applies Section 63 to a situation where there is a valid residuary clause in the will, that the Surrogate's cases are not controlling in any event, and that the New York Court of Appeals has decided the law applicable to the case before us.

In the *Matter of Kohler*, 231 N. Y. 353, 132 N. E. 114, 121, decided in 1921, the court had before it a will in which a testator left the residue of his estate in trust, and directed his trustees to set aside shares sufficient for the purpose and to pay over to each of his three

daughters the sum of $25,000 *per annum,* and, in addition, when each arrived at the age of 25 to pay over to her $100,000, when each arrived at the age of 35, another $100,000, and when each arrived at the age of 45, a further sum of $100,000. There was a final clause eighteen which provided that any balance or residue of the estate remaining after the bequests before provided for, including the trusts created, was devised and bequeathed to the testator's children, to be divided between them share and share alike. The court held that the income was not specifically disposed of in the clauses providing for the three $100,000 bequests to each daughter, and it was the duty of the trustees to invest these principal sums so that income would necessarily result. As the income could not validly be accumulated, and as the directions to hold the amounts for later payment were valid limitations of expectant estates, the income should be paid to the persons presumptively entitled to the next eventual estates under Section 63 of the Real Property law, made applicable to personal property by Section 11 of the Personal Property law, that such persons were the daughters, and therefore they should get the income. As to the fund, which was to be set aside in each case to produce an annual income of $25,000, Judge Chase, who delivered the opinion of the court, did not agree with the majority of the court, but the majority's decision was the applicable law, and this was stated as follows: "A majority of my associates, however, are of the opinion that, inasmuch as the trustees are only entitled strictly to set aside a trust fund sufficient to produce an annual income of $25,000 in the case of each beneficiary named, any income which may have accumulated between March 16, 1915, and the date when the trusts are actually set aside, or which may be produced after the trusts are set aside in excess of what has been required or may be required to make said annual payment of income provided by the will, should be treated as part of the net residuary estate and be paid over under clause eighteen thereof."

The differing treatment in the *Kohler* case demonstrates the distinction between the $100,000 principal bequests and the $25,000 income bequests. In the former, the testator, while making no specific provision for the accumulation of income, was held to have made such provision by implication, because of the obilgation imposed on the trustees to invest the principal pending the arrival of the times fixed for payment. Such implicated provision was unlawful, and, therefore, the income thus accumulated passed under Section 63. In the case of the $25,000 bequests of income, the testator did not contemplate that more of the principal of his estate would be used to produce this income than was necessary. He had, therefore, neither directly nor by implication, directed any accumulation of income, and the surplus went back, where the principal which produced it came from, to his residuary estate.

The *Kohler* case was distinguished in *Matter of Clark's Will*, 251 N. Y. 458, 167 N. E. 586, 587, decided July 11, 1929, by a unanimous court which included Chief Judge Cardozo, afterward associate justice of the United States Supreme Court. In that case, executors and trustees were directed to set aside a fund sufficient to produce, at the rate of 5%, a net annual income of $25,000. The net income of the fund was to be paid over to the wife. There were two similar trusts, each to produce a net annual income of $2,000, one for a sister and the other for a son. Thereafter there was a residuary clause leaving the rest and residue of the estate to the children of the testator and the issue of a deceased child. The value of the estate was not sufficient at first to produce, at the rate of 5%, net incomes totaling $29,000, but eventually such income was produced. The court had to decide whether the life beneficiaries of the three funds were entitled to any excess of income over $29,000. The court distinguished the case from the *Kohler* case because, in the latter case, there was no direction to pay more than $25,000 to the life tenant, whereas in the *Clark* case, the life bene-

ficiary was entitled to the net income of the fund set aside. Under these circumstances, the court said that the life beneficiaries were entitled to the entire net income. In discussing the *Kohler* case, the court said: "The contest, there, over the surplus income was between the residuary legatees and those who would be presumptively entitled to the next eventual estate in the funds set aside to produce the life annuities. A majority of the court held that the trustees' authority was confined 'strictly to set aside a trust fund sufficient to produce * * * twenty-five thousand dollars,' and that, therefore, the remaindermen had no interest in any fund in excess of the necessary capital, or in the income derived from such excess."

The *Kohler* case was followed by the Supreme Court, Appellate Division, in *In Re Vanderbilt's Will,* 243 N. Y. S. 165. In that case, Cornelius Vanderbilt had bequeathed to his wife the annual income of $250,000 arising from securities to be selected from his estate and set apart by his executors. At the death of his wife, the principal was given to four of his children, with appropriate provisions for their issue. His residuary estate was given in trust to pay the net income to his son, Alfred, until he arrived at the age of 30, then to give him one half and to pay him the income from the remaining balance of the estate until he should arrive at the age of 35. Alfred attained the age of 35, and his interest as residuary legatee vested absolutely in him. At the time the case was decided, Alfred was dead, and his executors and children asked to have the accumulated excess income over and above the $250,000 declared due and payable to them. The court said: "It is clear from the language of article seventh that the testator intended that his wife should receive a fixed, annual payment of $250,000, and that, to accomplish this ruling purpose, the setting apart of securities to produce such payment was incidental." And then, citing and discussing the *Kohler* and *Clark* cases, *supra*: "We hold that the testator did not die intestate as to any of his

property. Section 63 does not apply to the situation here presented. The comprehensive language of article seventeenth of the will forbids recourse to that statute. That residuary article embraces every interest whether known or unknown, immediate or remote, for it included 'any part of my estate which may not have been effectually devised or bequeathed, or from any other source. * * *' Under that clause the surrogate was justified in holding that the surplus income passed to the estate of Alfred G. Vanderbilt." In so holding, the court had also this to say: "It is immaterial whether the fixed, annual income payable out of the fund established by the testator be referred to as an annuity or otherwise. The important factor is testator's dominant and controlling intent and purpose. It was to pay his widow $250,000 annually. The setting apart of the fund was to effectuate that purpose. The fund may be increased or decreased as circumstances require, as long as the amount of the fund is sufficient to carry out that intention."

When we are asked to construe the law of another state, it does not become necessary for us to decide between the conflicting views of different courts of that state if the question has been decided by the court of last resort. The court of last resort of the State of New York has, we think, decided this question adversely to the contention of the appellant. The duty of the trustees in the case before us was to set aside, under the provisions of the codicil, bonds sufficient only to pay certain taxes and insurance. There was no direction whatever that the income from this fund should be paid to his wife. The trustees naturally erred upon the safe side in setting aside more bonds than were required, but by their so doing, the widow did not acquire any right to all of the income from such bonds, and the excess was not disposed of in the codicil. Had there been no residuary clause in the will, this income might have followed the principal and gone to the eventual taker, but there was a residuary clause which disposed of the balance of the rents and profits. Whether they could or should

have been so paid over during the life of the widow, we do not now have to decide. What remains clearly passes under testator's residuary clause to his daughter, and, under her residuary clause, to the Mercantile Trust Company, trustee. The *Kholer* case is, in our opinion, controlling, and we are unable to see that the decision in that case on that point had any relation to the fact that the testator had directed his trustees, under certain conditions, to use the capital of his business for the purpose of paying the $25,000 legacies.

The appellant claims that the effect of the *Kohler* and *Vanderbilt* opinions is limited by other cases to annuities, citing in this connection the *Ball* and *Spitz* cases, *supra*, and the Massachusetts case of *Welch v. Hill*, 218 Mass, 327, 105 N. E. 1067, 1069. We have already discussed the *Ball* and *Spitz* cases. Massachusetts has no more authority to construe what the New York Court of Appeals meant in the *Kohler* case than has this state, but, in fact, we do not find that the case cited bears out the appellant's contention. The court there held that the accumulated income should go under the residuary clause because the accumulation was not included in the bequest, and "the donative words do not include all there is of the fund." See also *Weeks v. Pierce*, 279 Mass. 108, 181 N. E. 231. In the case before us, there was no fixed sum or annuity to be paid out of this codicil fund, but there was a sum which could be definitely ascertained each year, although it differed in each year. Beyond the necessary payments for taxes and insurance, the income was undisposed of by the codicil, and it does not matter whether the amount the trustees were to pay out of the income was a fixed income each year, or a sum which had to be calculated each year. In either event, the sum was designated by the testator, and no more than this sum could be paid out of the income under the codicil clause.

Since we have concluded that this case should be decided in accordance with the law of the State of New York, a reference to applicable Maryland cases would

have no bearing on the issue presented. It may be noted, however, that the decisions of this court, construing our own law, are in accord, so far as they go, with our interpretation of the New York law. *Burt v. Gill,* 89 Md. 145, 42 A. 968, 43 A. 177; *West v. Sellmayer,* 150 Md. 478, 133 A. 333; *Reid v. Walbach,* 75 Md. 205, 23 A. 472; *Green v. Green,* 182 Md. 571, 35 A. 2d 238.

*Decree affirmed, costs to be paid out of the estate of Gabriel D. Clark.*